## 9916

### BROWN v. SOUTHERN RY. CO. *ET AL.*

#### (96 S. E. 701.)

1. RAILROADS—INJURY TO TRAVELER—OVERHEAD CROSSING—INSUFFICIENT CLEARANCE.—Under Civ. Code 1912, sec. 3285, providing that "when a railroad is laid out across a highway * * * it shall be constructed so as not to obstruct the same," a railroad is liable to a person in a vehicle who is injured by insufficient clearance between the roadbed of a city street and the railroad's trestle above, whether or not the insufficiency of the clearance resulted from a raising of the road under the trestle by other causes, such as filling in by deposits, after the trestle was built.

2. MUNICIPAL CORPORATIONS—STREET OBSTRUCTIONS—RAILROAD TRESTLE.
   —Under Civ. Code 1912, sec. 3286, making it the duty of a city to
   prescribe the manner of making overhead or underground street
   crossings by railroads, and to require security from the railroad for
   compliance with requirements, it is jointly liable with the railroad
   for injury from insufficient clearance of railroad trestle crossing a
   highway.

3. TRIAL—SEVERANCE—DISCRETION.—Under Code Civ. Proc. 1912, sec.
   318, severance is in the wise discretion of the trial Court, and there
   was no error in denying separate trials in action against a city and
   a railroad company for injuries caused by insufficient clearance
   between a roadway and a trestle at an overhead crossing.

4. MUNICIPAL CORPORATIONS—RAILROADS—ACTIONS—EVIDENCE—SIMILAR
   ACCIDENTS.—In action against railroad company and city for injuries
   from overhead railroad crossing with insufficient clearance for vehicles,
   the circumstance that other vehicles of like character at the same
   place, within a reasonable time, had met with the same obstruction
   was competent.

5. EVIDENCE—PHOTOGRAPHS.—In such action, a photograph at the place
   of the accident of the same wagon and mules, but not the same bales
   of cotton as comprised the load on which the injury occurred, was
   competent to illustrate the locus.

6. APPEAL AND ERROR—HARMLESS ERROR—PLEADING—REFUSAL TO STRIKE.
   —In action against a railroad for injuries to driver of vehicle from
   insufficient clearance of overhead crossing, it was not harmful error
   to refuse to strike out of the complaint the allegation that the body
   of deceased was "mangled and crushed."

7. MUNICIPAL CORPORATIONS—INJURY TO TRAVELER—STREETS—OVERHEAD
   CROSSING.—A city was liable for injury to vehicle driver from insuf-
   ficient clearance of a railroad trestle crossing the highway, although
   it was a three-track trestle, and the immediate cause of injury was
   insufficient clearance of the middle trestle, built before enactment of
   1882 statute, making city liable for certain torts; the two side trestles,
   which concealed the true elevation of the middle trestle, and made
   such elevation dangerous, having been built after 1882.

8. CONTRIBUTION—JOINT WRONGDOERS.—Where city and railroad were
   joint wrongdoers in creating a nuisance consisting of a trestle cross-
   ing a highway with insufficient clearance, neither could have contri-
   bution from the other as to judgment recovered against either for
   injuries from such nuisance, but both were liable to pay the recovery
   in equal parts.

9. MUNICIPAL CORPORATIONS—INJURIES TO TRAVELER—STREETS—CONTRIB-
UTORY NEGLIGENCE.—A traveler on the highway is not necessarily neg-
ligent, though he knows of an obstruction therein, and could by use
of his faculties discover that it is dangerous, but fails to do so; but
he is held to the exercise of ordinary care only, and is not bound to
go upon a voyage of discovery, by using his faculties, to find out if
the way is dangerous.

Before SEASE, J., Spartanburg, Spring term, 1917.    Af-
firmed. .

Action by John H. Brown, as administrator of Fred. C
Tuck, deceased, against the Southern Railway Company and
others.    From judgment for plaintiff, defendants appeal.

*Messrs. Nicholls & Nicholls* and *John Gary Evans,* for the
City of Spartanburg, appellant.    *Messrs. Geo. W. Nicholls*
and *John Gary Evans* cite : *As to the rights of the defendant,
city, to amend its answer:* 96 S. C. 300 ; 42 N. E. 703 ; Dillon
Mun. Corp., sec. 1037 ; 49 Atl. 257.    *As to the refusal of the
motion for a severance:* Code of Civ. Procedure, sec. 318.
*As to the refusal of the motion for a nonsuit by the city of
Spartanburg:* 80 S. C. 118 ; 36 Cyc. 1180 ; 36 Cyc. 1212 ; 2
Black U. S. Law Ed., Book 17, p. 298 ; 4 Wall. 657 ; 34 N. E.
459 (and cases cited) ; 86 Mo. App. 585 ; 57 S. W. 319 ; 39
N. E. 909 ; 86 S. E. 524 ; 83 N. E. 331 ; 2 N. E. 787 ; 101
U. S. Law Ed., Book 40, p. 712 ; 23 Pick. 24 ; 24 Am. Dec.
33 ; 96 N. Y. 550 ; 47 N. Y. 475 ; 18 N. Y. 84 ; 111 Mass.
157 ; 85 L. Ed., and cases cited ; 61 Atl. 810 ; McQuillan
Mun. Corp. 5634, p. 2750 ; *Idem,* page 5655, p. 2767 ; 91
N. Y. S. 479 ; 1 McC. Arthur 328 ; 18 S. E. 913.    *As to the
liability of a city where a railway bridge is built over a high-
way, and the grade of a street is raised by the city so that
travelers cannot pass under it safely:* McQuillan Mun. Corp.,
p. 2780, page 5670 ; 66 Atl. 159 ; 140 Mass. 552 ; 5 N. E.
616.    *As to contributory negligence on the part of the
deceased:* 78 S. C. 132 ; 74 S. E. 132.

*Messrs. Sanders & DePass,* for Railway Company,
appellant, cite : *As to the duty of the city to keep in good*

*repair all of the streets, ways and bridges within the limits of said city:* Code of 1912, vol. I, sec. 2951; 3 Dil. on Mun. Corp., sec. 1227 (5th Ed.), page 947; 37 Cyc. 226, 285 and 286. *As to the liability of a municipality on account of obstructions in a street created by a railroad:* 5th Thompson on Negligence, sec. 621; 6th McQuillan on Mun. Corp., sec. 2780, p. 5676; 54 Conn. 554; 140 Mass. 552 (5 N. E. Rep. 166); 1st Wood on Nuis., sec. 288, 3d Ed. *There is no statute in this State which makes it the duty of a railroad company to keep and maintain in good repair, the roadbed of a public road across the roadbed of the railway company:* Code 1912, vol. I, sections 1950, 3240, 3286, 3951; 76 S. C. 554. *Where a railroad is built across the street of a city, either at grade or above the street, by authority of the legislature, or through the authorized act of the municipality, the railroad is exempt from prosecutions or suits as a public nuisance:* 3 Dill. on Mun. Corp., sec. 1247, 5th Ed. *Even if the trestle had been a nuisance per se, it was necessary that notice should be given to them before any action could be brought against them on that ground:* 52 S. C. 404; 47 S. C. 464; 54 S. C. 98. *The principle in 67 S. C. 181, does not apply here. As to the irrelevancy of allegations of other accidents at this point, and the incompetency of testimony in support of such allegations:* Jones on Evidence, Pocket Ed., sec. 163; 33 Cyc., p. 1076. *As to the admission in evidence of photographs of different bales of cotton on a wagon, when it was shown that this cotton was not the same cotton, etc.:* 17 Cyc., p. 416, *et seq.*

*Messrs. Bomar & Osborne,* for respondent, cite: *As to duty of city as to streets, and liability for defects therein:* Vol. I of the Code, secs. 3053, 2951, 2955; Acts of 1871, p. 341; sec. 6, Acts of 1880, p. 437; sec. 9; 89 S. C. 519; 106 S. C. 255; 20 L. R. A. (N. S.) 513, and note; 19 L. R. A. (N. S.) 507, and note; 36 Century Digest, title Municipal

Corporations, column 250-254; 94 S. C. 377; 3d Elliott on Railroads 1642; 88 S. E. 464; Elliott on Railroads 1642, 1667; 88 S. C. 484; 101 S. C. 48; 78 S. C. 132; 81 S. C. 478; 83 S. C. 552; 78 S. C. 386; 73 S. C. 257; 58 S. C. 417; 67 S. C. 513; 88 S. E. 404; 84 S. C. 124. *As to the liability of railroads for proper erection and maintenance of bridges and crossings:* Code, vol. I, sections 1948, 3103, 3104, 1950, 3127-8, 3240, 3285, 3286, 3287; Crim. Code, sections 635 and 648; 31 S. C. 396; 28 S. C. 25; 76 S. C. 355; White on Personal Injuries on Railroads, sections 903, 904, 905, 907, 909 and 915; Baldwin on American Railroad Laws; Elliott on Railroads, vol. III, secs. 1092, etc.; 88 S. C. 484; Elliott on Railroads, vol. III, sec. 1112. *As to nuisances:* Joyce on Nuisances, sec. 52; 37 S. C. 334; 57 S. C. 516; Joyce on Nuisances, sec. 56; 53 L. R. A. 900; 3 S. C. 449. *Violation of statute, negligence per se:* 85 S. C. 25. *As to joint and several liability:* 67 S. C. 514; 106 S. C. 531; Bliss on Code Pleading, sections 82, 83 and 88; Pomeroy's Remedies, sections 281, 282, 307-312; Sutherland on Damages, vol. —, sections 140, 141; vol. IV, sec. 1059; American Negligence Digest, p. 401; 20 L. R. A. (N. S.) 760, note. *As to liabilities of lessor and lessee railroads:* 43 S. C. 197; 93 S. C. 365; 77 S. C. 553; 63 S. C. 374; 77 S. C. 550; 79 S. C. 558; 82 S. C. 518; 84 S. C. 190; 75 S. C. 169. *As to punitive damages:* 101 S. C. 412; 97 S. C. 67; 71 S. C. 345; 74 S. C. 317, 319; 59 S. C. 105; 88 S. E. 464; 3d Elliott on Railroads, p. 1707; 52 S. C. 329; 20 L. R. A. 668. *As to motion for severance:* 67 S. C. 514; 94 S. C. 195-6; 97 S. C. 30. *As to motion for nonsuit:* 106 S. C. 124; 88 S. E. 464; 101 S. C. 48; 106 S. C. 255; 20 L. R. A. (N. S.) 513. *As to the degree of judgment required of a traveler, suddenly and unexpectedly brought face to face with a danger or defect placed in the highway by another:* 101 S. C. 438. *As to the allegation of mangling the body:*

74 S. C. 317.   *As to the duty of a railroad, which runs its track across a public highway not to interfere with that highway:* 31 S. C. 397.

March 7, 1918.

The opinion of the Court was delivered by Mr. Justice Gage.

Action against the Southern Railway Company and its lessors and the city of Spartanburg for a joint tort to the person of one Fred. V. Tuck; verdict for the plaintiff for $6,000; appeal by the defendants.

The trial Court was beset with difficulties on every hand; the plaintiff proffered 22 requests to charge, the railway companies had 26 requests, and the city sent up 25 requests. And here the railway companies have made 25 exceptions, and the city has made 33 exceptions. Fortunately the railroad company has argued only five questions, and the city has argued twice that number; but there are not nearly nine vital issues in the case. The nine issues will be considered in their order after some history of the controversy is detailed.

In the city of Spartanburg, from, at, or near the United States Postoffice on North Church street, there run towards the east a street called Elm. Going east on that street some 200 or 300 yards, and down a considerable grade, the traveler reaches the Southern Railway trestle which crosses the street overhead. On the instant occasion a wagon was loaded with three bales of cotton, two on the wagon bed lengthwise with the wagon and one bale on top of those crossways. A witness thus describes how the accident occurred:

"We were sitting on the top bale of cotton on the wagon as we entered Elm street. At the top of the hill we looked down and could see the trestle. It looked like we could go under it all right. As we approached it, we got down onto

10—111

the front bale of cotton. When we got to the trestle, we nodded our heads down, and it looked like we could get under it all right. After we got down on the front bale, we nodded our heads down, and it looked like we could go under all right. Both bowed our heads. Father was crushed by the beams on the trestle. He was sitting on the right-hand side. I was on the left. It knocked me off."

The father was killed. It was conceded that the middle trestle was built about 1878, and the other two trestles in recent years. The evelation of the bottom of the trestle at the time of the accident was about eight feet. The middle trestle had eight inches less elevation from the roadbed than the two side trestles.

The delicts laid to the defendants are these: (1) That the trestle was triple and supported triple tracks, and the middle trestle was of a lower elevation than the trestles on each side of it, so that the traveler going east on Elm street was misled on approaching the first trestle to think the middle trestle was of like elevation to the first; and (2) that the roadway of Elm street underneath the trestle had been unduly elevated so as to impede vehicles in passing underneath the trestle.

The railway company makes but one major question; the others are minor. The major issue is thus stated by the company:

"His Honor erred in instructing the jury that the duty of the railway company to keep the street under its trestle in repair, and in refusing to instruct the jury that this duty devolved upon the city of Spartanburg, and that if the trestle was originally built in a reasonably safe way, and that the underpass became dangerous by the street being filled in by the city, or by reason of the city permitting it to be filled in, that the railway company would not be responsible."

In considering the defense of the company it is sometimes so entwined with the defense of the city that we shall

naturally mix up the questions which the two defendants have made.

The requests to charge and the exceptions are too voluminous to set out, much less to consider *seriatim*. There is much in them about "repair" and "defect;" but the cardinal matter up for inquiry and for decision was a proper and responsible elevation betwixt roadbed underneath and trestle timbers above.

The Court declined to instruct the jury, upon request of the railroad company, that if that elevation was insufficient for the passage of vehicles, and that insufficiency was caused by the raising of the roadbed by the city of Spartanburg, then it was not the duty of the railroad company to remedy the obstruction thus created. The plaintiff had no request which stated the contrary of this postulate.

The railroad company and the city both denied that they had raised the roadbed; and there is no direct testimony tending to prove that the roadbed was raised in any specific time of a purpose. Two or three witnesses testified only to the circumstance that a recent excavation in the roadbed by the railroad company underneath the trestle indicated that foreign matter had at some time found its way into the roadbed there; but none of the testimony tends to show that there was any appreciable raising of the roadbed at that point. The aforesaid request of the railroad company was, therefore, irrelevant to the facts of the case; it was based upon a fictitious issue.

The street was dedicated to the public use 30 or more years before the trestle was erected. The public had the right to its unobstructed use. When the trestle was built and when the two side trestles were added the obligation to leave open a sufficient way for the public to pass under it was upon both the railway company and the city. If the company left an insufficient elevation betwixt

roadbed beneath and trestle above for the passage of vehi-
cles, that was a legal wrong to the public.    The statute
declares:

"Sec. 3285. When a railroad is laid out across a highway
* * * it shall be construct~ : :o as not to obstruct the same."

The city's duty in the circumstances was to prescribe the
manner of crossing the street.    The statute declares: "Sec.
3286. A railroad corporation may raise or lower any high-
way * * * for the purpose of having its road pass
over or under the same; but before proceeding to
cross, alter, or excavate for the purpose of crossing
the way, it shall obtain from the" proper municipal authorities
"a decree prescribing what alteration may be made in the
way, and the manner and time of making the alterations or
structures the" municipal authorities "may require at the
crossing; and before entering upon, excavating, or altering
the way, shall give security satisfactory to the" municipal
authorities "* * *  that it will faithfully comply with the
requirements of the decree * * * and indemnify the city
* * * from all damages and charges by reason of any fail-
ure to do so."

It was as much the duty of the city to see that the statute
was observed as it was of the company to follow the statute.
The city and the company were, therefore, made by the stat-
ute joint enterprises, and any delict thereabout was a joint
tort.

The railroad company does not contend that if the eleva-
tion in question remained unchanged, and if it was insuffi-
cient at the start and continued so, then the company is free
from liability.    Nor can the city deny that under like
circumstances its duty was breached.    The argument
. of the company, though, is that, if the elevation was
after the first erection changed by the act of the city, as the
company holds it was, then the company is not brought into

the wrong.  As we have said, the testimony does not make that case.  But if the testimony made such a case, yet where the statute has cast joint action on the two parties, the company and the city, where they had concurrent jurisdiction at a crossing, the obligation on each was commensurate with the power of each, and the obligation continued so long as the trestle and the highway coexist.  The "security" contemplated by the statute, made by the company to the town, contemplates compliance with the decree, in the present and in the future.  The company and the city were thus bound together.  It is true the middle trestle was erected prior to the enactment of the statutes we have quoted; but the other two trestles were not, and it was as much the duty of the company and the city to follow the statute as to these two as it was in the beginning.

The company and the city being, therefore, thus united in the essential transaction, the Circuit Court was not wrong to rule that the trial should proceed against the two thus united.  Severance was in the wise discretion of the trial Court.  See Code of Procedure, section 318.

The second ground of the company is stated thus:

"His Honor erred in refusing to instruct the jury that if the trestle was built across this street at a sufficient height from the street before the Southern Railway—Carolina Division, was organized, and before the Southern Railway Company leased the road, and if the grade of the street was raised by the city so as to make this underpass dangerous, then, before recovery could be had against either of these defendants, there must be some evidence that notice was given to them of such danger."

Reliance is had upon *Leitzsey v. Water Power Co.,* 47 S. C. 464, 25 S. E. 744, 34 L. R. A. 215.  It was stated, however, in that cause that the rule which requires notice "is based on the reason that it would be unjust to subject a

person, not the creator of a nuisance, to a suit for the nuisance of which he was ignorant, and which he did not intend to continue." But the company saw the elevation of the trestle. Mr. Hungerford, superintendent of the company, was present at the crossing for the purpose of inspection in 1910, and he inspected it then. He testified that he went there upon the request of Gallman, a councilman of the city; and Gallman testified that Hungerford then said that steel girders would lessen the space between the trestle and the ground. The superintendent was bound to take notice of what others saw; that the then elevation was insufficient.

In two instances the company has challenged the competency of testimony which was offered by the plaintiff, and which referred to: (1) Other and similar accidents at the same place within recent years; and (2) to photographs of wagons loaded with other cotton to illustrate the locus.

On the first point the issue was sufficiency of the elevation for the passage of vehicles. The circumstance that other vehicles of like character at the same place, within a reasonable time, had met with the same obstruction that hindered in the instant case is competent. 10 R. C. L., p. 940. And the same is true with reference to the testimony of Will Means to the same point, and objected to by the city.

On the second point, photographs to reasonably reproduce the locus are offered and admitted every day in the trial Courts. The photograph was of the same wagon and mules, but not the same bales of cotton.

Lastly for the company, it was not harmful error, if error at all, to refuse to strike out of the complaint the allegation that the body of the deceased was "mangled and crushed."

We come now to the grounds of the city for a new trial. They are mostly of a minor sort. The city desired to plead

and to prove a minute of the town council of Spartanburg made in 1873, which granted to the railroad companies there named, predecessors of the defendants, permission "to use any of the streets * * * to make crossings * * * provided that in so doing said companies shall make good crossings so that there shall be no obstructions to travel on said streets * * * and that said railroad companies be required to keep said crossings in good repair." The professed object of the minute is thus stated by the city.

"The amendment was proper for the reason that, if the jury found the city liable, they could have found whether the railroad was liable over to the city, and thus made a complete adjudication of the matter without further litigation."

If the minute was offered for that purpose—and the city avers it was—then the minute was not necessary to compass the end in view.

Under the pleadings and under the evidence the city might have requested a special verdict; but counsel admitted before this Court that no such request was made. The city moved for a nonsuit, and it was denied. The motion was based on these two grounds:

"(1) The undisputed testimony is that the trestle in issue was built in 1874, and at that time no action could be maintained for tort.

"(3) The alleged accident was not due to anything under the control of the city of Spartanburg, the legislature giving the corporation the right to cross all streets within the limits of Spartanburg."

But only the first ground was argued. It is true that the middle trestle was erected about 1878, four years before the enactment of the statute which makes a city liable for certain torts. But the two side trestles were erected long after 1882, and their presence, operating to conceal the true elevation of the middle of the trestle,

is the chief delict charged by the plaintiff. And when the two side trestles were erected it was the duty of the railroad company and the city to pursue thereabout the direction of the statute first quoted, as much as if that erection had constituted the initial enterprise.

The action of the railroad company and the city when they came to occupy a public thoroughfare, the one to build and the other to direct the plan of building a trestle pursuant to the directions of a statute, constituted them joint doers of the work; and its imperfect doing made them joint wrongdoers. The wrong of the railroad company and of the city lay not in a failure to abate a nuisance, but in the creation of a nuisance. And about that transaction the parties are equally culpable. In such cases the rule of law is that one of the two joint wrongdoers can have no contribution from the other. Both the defendants are liable to pay the recovery in equal parts.

The city's seventh head of argument, the brief says, is based on this postulate:

"Where a railway bridge is built over a highway and the grade of a street is raised by the city so that travelers cannot pass under it safely, the city is liable, but a city is not liable for failure to keep dirt roads free from ruts, etc., ordinarily made by wagons in soft ground. The same degree of smoothness is not to be expected upon a dirt road as upon an asphalt street."

There is nothing in the testimony about ruts in the street, or about their lack of smoothness. The sole question was whether the elevation of the trestle was sufficient.

The city requested the Court to charge the jury thus: "I charge you that one who knows of an obstruction in a highway, and who, by use of his faculties, could discover that the same was dangerous, is bound to do so, and if he fails to do so, is guilty of contributory negligence, and your verdict should be for the defendant."

The request was rightly refused.   A traveler on the highway is held to exercise ordinary care, and to the performance of other duties not now relevant.   He is not bound to go upon a voyage of discovery, by using his faculties, to find out if the way is dangerous.   One man is endowed with acute observation, another is slow to see; neither of them is the standard to be applied to the deceased.

The ninth head of argument goes to inconsistences in the Court's charge, and chiefly about "repair" in the street, a matter irrelevant to the case.

The city finally challenged five of the requests proffered by the railroad company and charged by the Court.   The propositions of law so charged did not at all limit the just rights of the city; they only stated the duty of the railroad company to the deceased in the premises assumed.

Our opinion is, the judgment of the Circuit Court is right, and it is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. JUSTICE FRASER, *dissenting*.   I cannot concur in the opinion of the majority.   Witness, A. N. Hallman, testified: "All the stuff I put in there would not fill over two inches. I raised the level not over two inches on permission of the town.   They, the town, worked the street quite often."

In my judgment, the request to charge was based on the testimony.   There was, as I read the testimony, evidence from which the jury might have inferred that the grade was raised by permission of the city, even more than two inches. A difference of two might have produced or avoided an injury.   There was conflicting evidence, but that was a question for the jury.   If the jury believed that the city, by direct act of its agents, or by permission, made the place unsafe, and the injury was the result of the city's conduct, then I think the railway is not liable.