0769

Gary L. COGDILL, Respondent v. Jerry L. WATSON, Individually and d/b/a Carolina Business Investments, Appellant.

(347 S. E. (2d) 126)

Court of Appeals

*Everett Hope Garner* of *Holler, Dennis & Olive,* Columbia, *for appellant.*

*Carlos W. Gibbons, Jr.* of *Kneece, Kneece, Willoughby, Ashley & Gibbons,* Columbia, *for respondent.*

Heard June 18, 1986.

Decided Aug. 4, 1986.

SANDERS, Chief Judge:

Respondent Gary A. Cogdill brought this action alleging fraud, breach of contract, negligence, gross negligence and recklessness and unfair trade practices by appellant Jerry L. Watson while acting as an agent and broker in connection with the sale of a business. The jury returned a general verdict for actual and punitive damages. We affirm.

I

We first consider the exceptions of Mr. Watson by which he asserts error by the trial judge in allowing the lawyer representing Mr. Cogdill to ask him certain questions regarding previous law suits brought against him.

Mr. Cogdill's lawyer called Mr. Watson as a witness and attempted to question him about a previous lawsuit brought against him by a Mr. Weaver. According to one of the questions, Mr. Watson had been sued by Mr. Weaver for fraud and deceit. Mr. Watson's lawyer objected on the ground that the question was not relevant. The trial judge sustained his objection.

Mr. Cogdill's lawyer next asked Mr. Watson whether he knew a Mr. and Mrs. Moreland. Mr. Watson answered affirmatively. Mr. Cogdill's lawyer then asked Mr. Watson how he knew them. Mr. Watson answered that they had bought a piece of property from him several years ago. Mr. Watson's lawyer did not object to these questions, but when Mr. Cogdill's lawyer attempted to ask Mr. Watson where the property was located, his lawyer objected on the ground that the question was not relevant. The record does not reflect any ruling by the trial judge on this objection but neither does the record reflect any answer to the question.

Mr. Cogdill's lawyer next asked Mr. Watson to identify Mr. Weaver. Mr. Watson answered that he was from North Carolina and worked for a meat packing company. Mr. Cogdill's lawyer thereafter asked Mr. Watson whether his conduct as a broker had ever been called into question. Mr. Watson answered this question with a question, asking Mr. Cogdill's lawyer what he meant by his conduct as a broker. Mr. Cogdill's lawyer responded by asking Mr. Watson whether he had ever been involved in litigation as a result of his conduct as a broker. Mr. Watson answered that he had been. His lawyer did not object to these questions.

The following questions by Mr. Cogdill's lawyer and answers by Mr. Watson ensued without objection.

Q. And that was with VR Brokers, wasn't it?

A. That's correct.

Q. And that involved the misrepresentation in the sale of a business?

A. I don't know if that's the correct term or not. I don't know what it really involved. I was named as a party in a suit against VR business broker and the owner of the business that was sold.

Q. You were served with a copy of that suit, weren't you?

A. I was, yes.

Mr. Cogdill's lawyer then asked Mr. Watson:

Q. Does this information on this statement sound familiar to you, that Jerry L. Watson knew or should have known of the falsity of the warranties and representations made by the defendants?

Mr. Watson's lawyer objected on the grounds that the statement referred to in the question was "out of context" and "we don't — I don't even know what it is" and "it's only an allegation." The trial judge did not directly rule on the objection but after some discussion stated: "Well, we're not going into the matter of the prior litigation." The question was not answered.

Instead, Mr. Cogdill's lawyer asked for permission to restate the question, and the following questions by him and answers by Mr. Watson ensued without objection.

Q. Mr. Watson, that lawsuit involved fraud and misrepresentation, did it not?
A. I don't really know what it involved. I cannot really say that I know that.
Q. You were defendant in the case.
A. I was named the defendant in the case.

Mr. Cogdill's lawyer then concluded his first examination of Mr. Watson and his own lawyer proceeded to question him.

Mr. Watson's lawyer began by questioning him regarding the previous suit about which Mr. Cogdill's lawyer had just questioned him. One of his questions elicited the answer that no verdict had been returned against Mr. Watson in the suit. Mr. Watson's lawyer then asked him a series of questions regarding his dealings with Mr. Cogdill and his duty as a broker generally. One of these questions elicited the answer that his reputation as a good business person was important to him.

After the examination of Mr. Watson by his own lawyer, Mr. Cogdill's lawyer questioned him a second time and the following questions and answers ensued without objection.

Q. And I assume your personal reputation is important to you.

A. Yes, it is.

Q. And are you a man who pays your debts?

A. In most cases, yes.

Q. In most cases? And you say that this case is important to you.

A. Yes, it is.

Mr. Cogdill's lawyer then asked Mr. Watson why he had been sued so many times for not paying his debts in the last few years. Mr. Watson's lawyer objected but did not state any grounds for his objection. The trial judge overruled his objection, stating that the reputation of Mr. Watson was an issue in the case.

Mr. Cogdill's lawyer next asked Mr. Watson whether he recalled being sued on a certain debt. Mr. Watson answered that he did recall the suit. Mr. Cogdill's lawyer then asked Mr. Watson whether he recalled being sued by Mr. and Mrs. Moreland for a mortgage he did not pay. Mr. Watson answered that he did recall. Mr. Watson's lawyer did not object to these questions, but when Mr. Cogdill's lawyer attempted to ask Mr. Watson whether he had paid the debt, his lawyer objected for the first time on the ground that Mr. Cogdill's lawyer was attempting to impeach his own witness. The trial judge overruled his objection.

Mr. Cogdill's lawyer then asked Mr. Watson a series of questions about the suit brought against him by Mr. Weaver as well as several other previous suits. Mr. Watson's lawyer objected to the form of one of these questions before Mr. Cogdill's lawyer completed asking it. The trial judge did not rule directly on this objection, but at his direction the question was restated and asked without objection. Mr. Watson's lawyer objected to another of these questions regarding a default judgment against him on the ground that Mr. Cogdill's lawyer was "going into it." The trial judge cautioned Mr. Cogdill's lawyer not to "go into the suit." The record does not reflect that this question was answered.

No further objections by Mr. Watson's lawyer appear in the record before us on appeal.[1]

---

[1] The record before us appears to be an extensively edited version of the record in the trial court. As the appellant, Mr. Watson has the burden of providing a sufficient record on appeal. *Winesett v. Winesett*, 287 S. C. 332, 338 S. E. (2d) 340 (1985); *Germain v. Nichol*, 278 S. C. 508, 299 S. E. (2d) 335 (1983).

## A

Mr. Watson argues that, since the lawyer representing Mr. Cogdill had called him as a witness, the trial judge should not have allowed the questions to impeach his testimony. We reject this argument.

Mr. Watson's lawyer objected to three of the questions regarding previous suits during the first examination of Mr. Watson by Mr. Cogdill's lawyer. His first objection was sustained. The record does not reflect a ruling on his second objection, but neither does the record reflect that the questions to which he had objected was answered. The trial judge did not directly rule on his third objection, but the question was not answered.

Mr. Watson's lawyer did not object to Mr. Cogdill's lawyer asking questions regarding one of the previous suits during his first examination of Mr. Watson. After this examination was concluded, Mr. Watson's lawyer proceeded to ask him questions about the suit himself, eliciting the answer that the suit had not resulted in a verdict against him.

Mr. Watson's lawyer thereafter asked him about his reputation as a business person, eliciting an answer from which the jury could have inferred that his reputation as a business person was good. Mr. Cogdill's lawyer had not asked Mr. Watson any question regarding his reputation as a business person during his first examination of him.

Only after Mr. Watson's lawyer had asked these questions and elicited these answers, did he object to questions by Mr. Cogdill's lawyer on the ground he was attempting to impeach Mr. Watson.

The trial judge has the discretion to allow impeachment of a witness who is an adverse party on the basis that it better enables the jury to determine whether the witness is telling the truth. *Reid v. Kelly,* 274 S. C. 171, 262 S. E. (2d) 24 (1980); *Sumner v. Pruitt,* 281 S. C. 63, 314 S. E. (2d) 150 (Ct. App. 1984).[2] Under the circumstances, we conclude the trial judge did not abuse his discre-

---

[2] Dictum contained in an earlier decision gives a more complete explanation of the reasons for allowing impeachment of a witness who is an adverse party. *See White v. Southern Oil Stores,* 198 S. C. 173, 17 S. E. (2d) 150 (1941).

tion in allowing Mr. Cogdill's lawyer to impeach Mr. Watson during his second examination of him.

## B

Mr. Watson further argues the trial judge should not have allowed the questions because they were not relevant. We also reject this argument.

The failure to make an objection at the time evidence is offered constitutes a waiver of the right to object. *McCreight v. MacDougall*, 248 S. C. 222, 149 S. E. (2d) 621 (1966).

Mr. Watson's lawyer objected to only two of the questions regarding previous suits on the specified ground that they were not relevant. One of his objections was sustained. The record does not reflect a ruling by the trial judge on the other one, but neither does the record reflect that the question to which he had objected was answered.

A third objection to a question regarding one of the previous suits was made on the ground "he's going into it." Even if this objection could be construed as an objection on the ground that the question was not relevant, it appears that this objection was sustained. In any event, the record does not reflect that this question was answered.

The general objection to the question asking Mr. Watson why he had been sued so many times for not paying his debts may have been intended as an objection on the ground that the question was not relevant, but the objection cannot be considered as having been made on this ground because no ground for the objection was specified. *See State v. Crowley*, 226 S. C. 472, 85 S. E. (2d) 714 (1955) (an objection to the admission of evidence must be on a specified ground).

## II

The remaining exception by Mr. Watson asserts: "That the Court erred in failing to grant Defendant-Appellant's Motion for Involuntary Non-Suit when Plaintiff-Respondent had failed to meet the burden of establishing the necessary elements of his causes of action."

We cannot address this exception because it does not contain a precise statement of one proposition of law or fact

as required by Rule 4, § 6, Rules of Practice in the Supreme Court of South Carolina.[3]

For these reasons, the judgment of the Circuit Court is Affirmed.

SHAW and BELL, JJ., concur.

---

[3] We have not required strict compliance with this rule where we can ascertain by examining an exception that it clearly embraces a meritorious assignment of prejudicial error. *E.g., Bartles v. Livingston*, 282 S. C. 448, 319 S. E. (2d) 707 (Ct. App. 1984). However, we cannot ascertain this by examining the exception here. Moreover, the brief of Mr. Watson does not add any clarification as to what error is asserted by the exception.