## 1552

TOWN OF WINNSBORO, Respondent v. WIEDEMAN-SINGLETON, INC., Turner-Murphy Company, and American Enviroport, Inc., Defendants, of which Specialty Constructors, Inc., f/k/a American Enviroport, Inc., is Appellant, and Turner-Murphy Company is Respondent. Appeal of SPECIALTY CONSTRUCTORS, INC., f/k/a American Enviroport, Inc.

(398 S.E. (2d) 500)

Court of Appeals

*Tobias G. Ward, Jr.,* Columbia, *for appellant.*

*Stephen G. Morrison, James C. Gray, Jr.,* and *Lisa D. Catt,* Columbia, *Terry E. Richardson, Jr.,* and *Desa A. Ballard,* Barnwell, and *John A. Martin,* Winnsboro, *for respondents.*

Heard April 12, 1990.

Decided Oct. 8, 1990.

BELL, Judge:

The Town of Winnsboro sued Turner-Murphy Company and Specialty Constructors, Inc., for breach of contract, negligence, and fraud in the construction of a waste water treat-

ment facility. Turner-Murphy, the prime contractor, cross-claimed against Specialty, a subcontractor, for indemnity to the extent of any damages it became liable to pay and its attorney's fees. At the close of the evidence, Specialty moved for a directed verdict on liability. The court denied the motion. The jury found Specialty liable for negligence and awarded actual and punitive damages. The jury exonerated Turner-Murphy on all claims. The trial court then directed a verdict for Turner-Murphy on its crossclaim for the amount of its attorney's fees. Specialty moved to set aside the directed verdict granted to Turner-Murphy and for a new trial. The court denied these motions. Specialty appeals the granting of Turner-Murphy's motion for directed verdict and the denial of its motions. We affirm.

Turner-Murphy hired Specialty to furnish and install a filter system for the waste treatment facility. From the beginning, the filter system did not work. After numerous requests from Turner-Murphy, Specialty made the first of many warranty repairs. However, problems persisted throughout the warranty period.

A test of the warranty repairs in January of 1986 revealed the system was performing as intended with a few exceptions involving defective switches and leaking seals. After the 90 day test period, other warranty problems surfaced. The Town notified Turner-Murphy of the continuing problem with the filters. In turn, Turner-Murphy notified Specialty. In September of 1986, Specialty returned to Winnsboro to correct these additional problems. The Town requested Specialty to convert the system from automatic to manual control. Specialty agreed to do the conversion at its own cost. The system has worked since Specialty converted it to manual control.

## I.

After Specialty completed the conversion, the Town signed a document titled "Document of Release." The Town and Specialty contest whether this document releases Specialty from liability for the design of the system.

By motion for a directed verdict, Specialty sought to have the "Document of Release" declared a general release from all liability to the Town as a matter of law. The document, in pertinent part, states:

> The Town of Winnsboro representatives have observed operation of the Enviro-port Pressure Filter System. All performance criteria and warranty provisions have been met and the Enviro-port Pressure Filter System has been certified as operational. [Specialty] has fulfilled all obligations as related to its contract on this project.

Among other things, the Town argues "this project" refers to the conversion to manual control, and therefore any release obtained by Specialty relates only to work performed in the conversion. Specialty argues "this project" refers to the design, furnishing, and installation of the entire filter system. At best, the sentence is ambiguous. Both interpretations advanced by the parties are supported by extrinsic evidence introduced at trial. Because the evidence regarding the scope and extent of the document is susceptible of more than one reasonable inference, the question of its meaning was for the jury. The trial court properly denied Specialty's directed verdict motion. *See Bonaparte v. Floyd,* 291 S.C. 427, 354 S.E. (2d) 40 (Ct. App. 1987).

## II.

Specialty also appeals the award of attorney's fees to Turner-Murphy. Relying on the well settled rule that there is no right of contribution among joint tortfeasors,[1] Specialty argues on the authority of *JKT Company v. Hardwick,* 284 S.C. 10, 325 S.E. (2d) 329 (Ct. App. 1984), that the rule has been expanded to include cases, like the present one, in which one of the codefendants is exonerated from all liability by the jury. On the other hand, Turner-Murphy essentially contends that it is entitled to recover its attorney's fees as an element of special damage arising directly from Specialty's breach of contract or, alternatively, under the principle of equitable indemnity.

To understand these arguments, it is helpful to view them in the context of the basic law of special damages and of indemnity.

---

[1] *Brown v. Southern Railway Co.,* 111 S.C. 140, 96 S.E. 701 (1918). This rule against contribution was abrogated in 1988, after the trial in this case, when our General Assembly enacted the South Carolina Uniform Contribution Among Joint Tortfeasors Act, Sections 15-38-10 to -70, Code of Laws of South Carolina, 1976, as amended.

## A.

If a plaintiff seeks special damages for breach of contract, he must plead and prove both the fact of damage and the amount of damage with a reasonable degree of certainty. *South Carolina Federal Savings Bank v. Thornton-Crosby Development Company, Inc.*, 302 S.C. 74, 399 S.E. (2d) 8 (1990). The fact of damage is proved by showing (1) that the plaintiff realized an actual loss he would not have incurred but for the defendant's breach of contract; and (2) that the loss was a natural consequence of the breach which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made. *Id.* The amount of damage may be established by proving the actual amount of the out of pocket loss or a reasonably accurate estimation thereof. *See id.*

## B.

Indemnity is that form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party. *State Insurance Fund v. Taron*, 333 P. (2d) 508, 512 (Or. 1958). A right to indemnity may arise by contract (express or implied) or by operation of law as a matter of equity between the first and second party. *See Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 24, 301 S.E. (2d) 552, 553 (1983). Unfortunately, indemnity is sometimes confused with other legal concepts such as suretyship, consequential damages, assignment, or third party beneficiary rights.

A familiar example of *contractual* indemnity is the third party liability insurance policy. Under such a policy, the insurer (the first party) agrees to pay the insured (the second party) the amount of any damages the insured may become legally liable to pay a third party. In this situation the insured's liability to the third party is often (though not necessarily) based on the insured's own fault (*e.g.*, negligent operation of an automobile, failure to maintain premises in safe condition). That is, the second party may be an at fault party.

A second example of *contractual* indemnity is a "hold harmless" clause in a subcontract. Here the subcontractor (first party) agrees to pay the prime contractor (second party) the amount of any loss the prime contractor may incur

to third parties as a result of the subcontractor's breach of contract or negligence. In this situation the subcontractor's liability is based on his own fault, not the fault of the prime contractor. That is, the first party is the at fault party.

A familiar example of *equitable* indemnity is found in the law of master and servant. Under the rule of *respondeat superior*, a master is vicariously liable for the torts of his servant. *South Carolina Insurance Co. v. James C. Greene & Co.*, 290 S.C. 171, 183, 348 S.E. (2d) 617, 621 (Ct. App. 1986). In such a situation, the law requires the servant (first party) to indemnify his master (second party) for the damages the master incurs to the third party because of the servant's tort. *Bell v. Clinton Oil Mill*, 129 S.C. 242, 256-57, 124 S.E. 7, 12 (1924). The right to indemnity is equitable, arising from the servant's status as a fiduciary to the master. It is created by operation of law rather than agreement of the parties. The master is liable to the third party through no fault of his own, but solely as a result of the servant's fault, which is imputed to the master by law. *Id.* That is, the first party is the at fault party.

Traditionally, the courts have allowed equitable indemnity in cases of imputed fault or where some special relationship exists between the first and second parties. In *Atlantic Coast Line R.R. Co. v. Whetstone*, 243 S.C. 61, 70, 132 S.E. (2d) 172, 176 (1963), our Supreme Court stated the rule applicable in imputed fault cases:

> "Ordinarily, if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him; but this is subject to the provision that no personal negligence of his own has joined in causing the injury."

*Id.* [quoting *North Carolina Electric Power Co. v. French Broad Manufacturing Co.*, 180 N.C. 597, 105 S.E. 394 (1920)]. The same principle may be applicable where a contractual relationship or tortious conduct creates a legal relationship between the parties. *See Addy v. Bolton*, 257 S.C. 28, 183 S.E. (2d) 708 (1971).

Equitable indemnity cases involve a fact pattern in which the first party is at fault, but the second party is not. If the

second party is also at fault, he comes to court without equity and has no right to indemnity. In other words, equitable indemnity cases resemble the fact pattern of the last two examples given above, not the fact pattern of the first example in which the second party is at fault.

## III.

The leading case of *Addy v. Bolton*, 257 S.C. 28, 183 S.E. (2d) 708 (1971), presents precisely the same fact pattern as the case at bar. In *Addy,* Thomason (the first party) contracted with the Boltons (the second party) to make repairs to a retail store building owned by the Boltons and leased to the Addys (the third party). In the course of the repairs, Thomason set the building on fire, damaging the Addys' stock of goods plus fixtures and improvements they had added to the premises. The Addys sued the Boltons and Thomason, alleging the Boltons were jointly and concurrently negligent with Thomason in making the repairs and in engaging unskillful agents to undertake the repairs. In other words, the Boltons were sued for their own independent negligence, not vicariously for the negligence of another. The Boltons crossclaimed against Thomason for indemnity for any judgment which might be recovered against them plus costs and attorney's fees incurred in defending the action.

At trial, the jury returned a verdict against Thomason only. The Boltons were exonerated from all liability. The trial judge refused to award an indemnity, directing a verdict against the Boltons on their crossclaim. On appeal, the Supreme Court reversed, basing its decision on alternative holdings.

First, the Court held that the Boltons were entitled to recover the attorney's fees incurred in the action, because they were put to the necessity of defending themselves against the Addys' claim by the tortious conduct of Thomason:

> [W]here the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees should be treated as the legal consequences of the original wrongful act *and may be recov-*

*ered as damages.* \* \* \* \* If the attorneys' fees were incurred as a result of a breach of contract between plaintiff and defendant, the defendant will be deemed to have contemplated that his breach might cause plaintiff to seek legal services in his dispute with the third party.

*Id.* at 33, 183 S.E. (2d) at 709-10 (quoting 22 Am. Jur. (2d), Damages, Section 166) (emphasis added).

The Court then went on to hold in the alternative that, on the facts of the case, the Boltons could also recover expenses incurred in the litigation on the theory of indemnity:

[W]e conclude that in actions of indemnity, brought where the duty to indemnify is . . . implied by law . . ., and no personal fault of the indemnitee has joined in causing the injury [to the third party], reasonable attorneys' fees incurred in resisting the claim indemnified against may be recovered as part of the damages and expenses.

*Id.* at 34, 183 S.E. (2d) at 710. Because the jury exonerated the Boltons of any fault for the Addys' injuries, equity required Thomason, the at fault party, to indemnify them as a matter of law.

*Addy v. Bolton* clearly supports the position of Turner-Murphy in this appeal. As a decision of the Supreme Court, it is also binding authority on this Court. *Shea v. State Department of Mental Retardation*, 279 S.C. 604, 310 S.E. (2d) 819 (Ct. App. 1983), *overruled on other grounds, McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985). Accordingly, we hold that the judgment of the circuit court may be affirmed both on the theory of special damages and on the theory of equitable indemnity.

## IV.

Specialty relies on *JKT Co., Inc. v. Hardwick*, 284 S.C. 10, 325 S.E. (2d) 329 (Ct. App. 1984), to support its position. In that case a fact pattern similar to this case was also presented. Celotex (the first party) manufactured and sold roofing materials to Hardwick ( the second party) which Hardwick used to install a roof on an office building of JKT (the third party). When JKT experienced problems with the roof, it sued Celotex for negligently supplying defective roofing

materials and Hardwick for negligently installing the roof. Hardwick crossclaimed against Celotex for indemnification for any liability he might incur arising from JKT's suit, including attorney's fees and litigation expenses paid to defend the suit.

At trial, the jury found Celotex liable to JKT for negligently furnishing defective materials, but exonerated Hardwick from all liability. The court then ordered Celotex to indemnify Hardwick for attorney's fees and court costs incurred in defending the action, a result which is compelled by *Addy v. Bolton*. Celotex appealed to this Court.

As the panel viewed *JKT*, the critical fact was that JKT sued Hardwick for his own wrongdoing (faulty installation), not for the wrongdoing of Celotex (furnishing defective materials). Thus, Hardwick incurred litigation expenses defending against allegations of his own negligence. *JKT*, 284 S.C. at 12, 13, 325 S.E. (2d) at 330. As this was not a case of imputed fault, the panel decided the rule in the *Whetstone* case, quoted above, did not apply.

The applicable rule, in the panel's view, was the rule that there is no right of indemnity among joint tortfeasors. *Id.* at 13, 325 S.E. (2d) at 331 (citing *Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 301 S.E. (2d) 552 (1983)). The panel reasoned that if the jury had found Hardwick liable, he would have been a joint tortfeasor not entitled to indemnity from Celotex for attorney's fees and other litigation expenses. Therefore, the Court concluded, Hardwick had no right of indemnification for attorney's fees and other expenses of litigation incurred in his *successful* defense of JKT's suit. *Id.* Neither the logic nor the justice of this conclusion is apparent. Since the jury found Hardwick was not a joint tortfeasor (he was exonerated from liability to JKT on all possible theories) the joint tortfeasor rule was not applicable.

*Addy, JKT*, and this case all present the same fact pattern. The third party sues the first party and the second party, alleging that each is a wrongdoer on his own part. At trial, the factfinder finds the first party at fault, but completely exonerates the second party. On these facts *Addy* and *JKT* reach conflicting results on the issue of the second party's right to recover expenses incurred in defending the action, including attorney's fees. *Addy* allows recovery; *JKT* denies it. Of

course, the rule in *Addy*, as a decision of the Supreme Court, must prevail. Accordingly, we overrule *JKT Co., Inc. v. Hardwick*.[2]

## V.

Finally, Specialty argues that the trial judge erred by directing a verdict in favor of Turner-Murphy on the issue of attorney's fees and expenses without first permitting Specialty to file its amended reply in the time stated and affording it a hearing.

Specialty contends that it asked for permission to respond in writing to Turner-Murphy's motion to amend its crossclaim to include attorney's fees and expenses, and that the trial judge granted Specialty ten days to file its amended reply. Specialty argues, however, that the trial judge granted a directed verdict before it filed its amended reply within the time set by the trial judge. The record does not support Specialty's argument. The record indicates that an amended reply was in fact filed; however, neither the exact date of filing nor the date from which the ten day period was to run is in the record. It is the responsibility of the appellant to include in the record all that is necessary for this court to resolve the issues presented on appeal. *Hamilton v. Greyhound Lines East*, 281 S.C. 442, 316 S.E. (2d) 368 (1984); *Cogdill v. Watson*, 289 S.C. 531, 347 S.E. (2d) 126 (Ct. App. 1986). Without knowing the date the amended reply was filed we cannot determine that the trial judge's November 2, 1987 Order directing a verdict against Specialty was prior to the expiration of the set time.

Specialty also urges that the directed verdict was improper because it was not given a hearing after it filed its amended reply. Specialty argues that, from the following testimony, it is "clear" that a hearing was contemplated:

---

[2] We are aware that our Supreme Court recently cited *JKT* in *Scott v. Fruehauf Corp.*, 396 S.E. (2d) 354 (S.C. 1990). The Court, however, relied on *JKT* only as authority for the settled rule that there is no right of indemnity among joint tortfeasors. We do not overrule *JKT* on this ground, and, obviously, this remains the common law rule in South Carolina. *Scott* is distinguishable because in that case the parties were in fact joint tortfeasors, whereas in *JKT*, as in the case we now decide, the parties were not joint tortfeasors.

MR. WARD: Your Honor, as long as we have the opportunity to respond with responsive pleadings. I mean, this matter is one, if you remember, their claim for attorney's fees outside of and independent of this action. Since they have alleged it in a different manner now, we would request that we be given the right to reply.

THE COURT: I will let you, if you want, just state it on the record right now.

MR. WARD: I would prefer to do it some other time. I am not really prepared to address it. *I would like to do in the form of a writing* so that the issues can be set forth to the court in manner which complies with the rules.

We are not persuaded by Specialty's argument. We do not view this testimony as indicating a hearing was contemplated, but as a clear expression of counsel's preference to present Specialty's argument through written pleadings. Furthermore, the testimony unquestionably demonstrates that Specialty was given the opportunity to orally argue against the motion, but chose not to do so. Under these facts, the trial judge did not err in granting the motion without a hearing. *See PPG Industries v. Orangeburg Paint & Deco. Ctr.*, 297 S.C. 176, 184, 375 S.E. (2d) 331, 335 (Ct. App. 1988).

The judgment of the circuit court is affirmed.

Affirmed.

SANDERS, C.J., and GARDNER, SHAW, and CURETON, JJ., concur.

GOOLSBY, J., concurs in part and dissents in part in a separate opinion.

GOOLSBY, Judge (concurring in part and dissenting in part):

I concur fully in Parts I and V of the majority's opinion. As to the remainder, I agree that Turner-Murphy is entitled under the facts of this case to recover attorney fees under the principle of equitable indemnity. *Addy v. Bolton*, 257 S.C. 28, 183 S.E. (2d) 708 (1971). I also agree that this case presents the "same fact pattern" as exists in *Addy*.

I disagree, however, that this case presents the "same fact pattern" as exists in *JKT Co., Inc. v. Hardwick*, 284 S.C. 10,

325 S.E. (2d) 329 (Ct. App. 1984) and that *Addy* and *JKT* reach conflicting results. *See* Gray and Catt, *The Law of Indemnity in South Carolina*, 41 S.C.L.R. 603, 607-09 (1990).

I also disagree that *JKT* should be overruled, believing as I do that *JKT* was correctly decided. *See Lightner v. Duke Power Co.*, 719 F. Supp. 1310, 1312-13 (D.S.C. 1989). Indeed, what the majority does by overruling *JKT* is to expand the Supreme Court's holding in *Addy* and to sanction in all cases involving codefendants, irrespective of the relationship existing between them, the recovery of attorney fees and litigation costs on the basis of equitable indemnity by a defendant who successfully defended against his own acts from a codefendant who was found liable. *See Tomlinson v. Sentry Engineering and Construction, Inc.*, 777 F. (2d) 918, 919 (4th Cir. 1985).