14 F.3d 594
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
C.P. CHEMICALS, INCORPORATED, Plaintiff-Appellant,
v.
EXIDE CORPORATION, INCORPORATED, Defendant-Appellee.
 No. 93-1426.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 26, 1993.
Dec. 28, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia.
 Richard Hood Willis, Nelson, Mullins, Riley & Scarborough, for appellant.
 Timothy William Bouch, Young, Clement, Rivers & Tisdale, for appellee.
 Clarence Davis, Karen A. Crawford, Nelson, Mullins, Riley & Scarborough, for appellant.
 Stephen P. Groves, Young, Clement, Rivers & Tisdale, for appellee.
 Before WILKINSON and LUTTIG, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 This case requires us to examine a contract's indemnification provision to determine if it extinguishes the seller's liability to the buyer for environmental contamination. We hold that the contract provision bars the buyer from initiating any suit against the seller in the nature of an indemnity action, and we remand the matter to the district court to determine if this case is such an action.
 
 I.
 
 2
 In 1976, C.P. Chemicals purchased a chemical plant in Sumter, South Carolina from Exide Corporation. The chemical plant had been built by Exide in 1966 as part of a battery manufacturing facility. That facility was composed of the chemical plant, which produced the chemical components contained in the batteries, and a battery plant used to assemble the batteries themselves. Exide sold the chemical plant because changes in battery manufacturing technology--specifically the switch from nickel cadmium batteries to lead acid batteries--made the plant unnecessary.
 
 
 3
 In 1989, C.P. discovered the presence of certain volatile organic compounds ("VOCs") in the groundwater at the chemical plant site.[1] C.P. attributed the presence of these compounds to wastes generated by the battery assembly plant and buried at the chemical plant site by Exide when it owned that site. C.P. therefore attempted to reach an agreement with Exide regarding cleanup of the contamination. After the parties failed to reach a settlement, C.P brought this suit seeking to recover cleanup costs from Exide pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Sec. 9601 et seq. ("CERCLA"). C.P. also alleged a variety of state law claims including negligence, nuisance, and trespass.
 
 
 4
 C.P. admitted that CERCLA liability could be allocated by contract. See 42 U.S.C. Sec. 9607(e)(1). Exide therefore sought summary judgment against C.P. on all of C.P.'s claims, arguing that the contract of sale barred C.P.'s suit. Specifically, Exide pointed to the indemnification portion of the contract which read in part:
 
 
 5
 52. SELLER has informed BUYER that during SELLER'S operation of the Chemical Plant on PREMISES that the ground and/or surface waters in the vicinity of the Chemical Plant on PREMISES may have become contaminated by nickel. SELLER agrees, subject to the provisions hereinafter contained, to indemnify, and hold BUYER free and harmless from and against all liability, loss, damage, or expense whatsoever, including reasonable attorney's fees, which may be incurred or suffered by BUYER by reason of any claims for the recovery of damages or seeking any other legal or equitable relief, arising out of any pollution or ground and/or surface water by SELLER. As to claims based on a state of facts prior to the Settlement Date, the foregoing indemnity by SELLER shall be absolute and shall not be subject to proration. As to claims based upon a state of facts after the Settlement Date, the foregoing indemnity shall be subject to the following:
 
 
 6
 ....
 
 
 7
 (h) The indemnity shall remain in effect for a period of six (6) years from the settlement date hereunder.
 
 
 8
 Exide argued below that this provision ("paragraph 52") gave C.P. indemnity rights against Exide for six years following the date of sale, after which C.P. would be barred from seeking money from Exide to cover any environmental cleanup costs. The district court agreed with Exide, stating that "[i]t absolutely is not reasonable, in my opinion, to read that ... the defendant would have full liability, then go to a transition period with shared liability [under the indemnity provisions], and that at the end of six years, go back to potentially full liability." The court thus granted Exide's summary judgment motion, holding Exide was not liable to C.P. for environmental cleanup expenses incurred after the lapse of the six year period specified in the contract. C.P. now appeals.
 
 II.
 A.
 
 9
 C.P. urges this court to reject the district judge's reading of the indemnification provision, contending that paragraph 52 cannot fairly be read as releasing Exide from all environmental liability. Such a reading, C.P. maintains, would be inconsistent with both the language of paragraph 52 and with CERCLA case law establishing that contract provisions allocating liability must be clearly stated. C.P. argues that the indemnification provision should be seen simply as a contract-based remedy provided to C.P. by Exide for a limited period of time. According to C.P., the expiration of the six year period means only that C.P. no longer has recourse to the contract's indemnification remedy.
 
 
 10
 We agree, in part. C.P. correctly points out that the contract provision at issue speaks in terms of indemnity. Indeed, the term "indemnity" appears three times in paragraph 52. The repeated use of this language must be given some effect in interpreting the contract. Paragraph 52's own language explicitly limits it to indemnification, and it cannot be read to provide Exide with a total release from liability to C.P. for environmental cleanup expenses.
 
 
 11
 We cannot agree with C.P., however, that the expiration of this indemnification provision serves to extinguish only a contract-based remedy available to C.P. Paragraph 52, while clearly limited to indemnity, does more than simply establish a contractual remedy of limited duration. Rather, paragraph 52 also bars C.P. from seeking indemnity from Exide for the costs of environmental cleanup once six years have passed. This contract provision, in discussing "all liability" and "any claims," speaks in broad terms about Exide's indemnity liability to C.P. That language manifests an intent to give C.P. extensive rights to pursue indemnification. Those broad rights are, however, limited in time by sub-paragraph 52(h), which states that the indemnity expires six years after the conclusion of the transaction. Thus, Exide accepted a period of expansive environmental liability in exchange for a promise that C.P. would be unable to seek indemnification after a set period of time had elapsed. This reading is the one most consistent with the language of this contract, one that was negotiated at arms-length by two sophisticated business parties.
 
 B.
 
 12
 C.P. nonetheless maintains that the indemnity provision, however it may be construed, has no bearing on the VOC contamination at issue in this case. First, C.P. contends that a list of "contaminants" contained in sub-paragraph 52(d) establishes the total universe of pollutants the indemnity provision was intended to cover and points out that the list includes no VOCs.[2] Second, C.P. argues that the indemnification provision was only intended to cover wastes produced by the chemical plant itself. It contends that the VOC contamination in question resulted from various non-chemical plant wastes that Exide nonetheless buried at the chemical plant site. In either case, C.P. contends that the indemnity provision--together with its expiration date--does not cover the action here.
 
 
 13
 Both these interpretations of paragraph 52 are simply too strained. That paragraph plainly speaks of "all liability, loss, damage, or expense whatsoever," and of "any claims for the recovery of damages or seeking any other legal or equitable relief[ ] arising out of any pollution." This language is most naturally, and most correctly, read to mean just what it says, namely that the provision in question deals with "all" environmental harm and covers "any" claims for indemnity relief. A reading restricting this provision to claims involving certain types of wastes simply fails to give Exide the protection the contract's language provides.
 
 
 14
 We therefore hold that after six years passed, paragraph 52 operated to bar all indemnity claims made by C.P. against Exide for costs arising out of any environmental cleanup. The holding of the district court is reversed to the extent that the lower court read paragraph 52 as a bar to all suits whether or not those actions are in the nature of an indemnity.
 
 III.
 
 15
 Because paragraph 52 bars all indemnity actions seeking cost recovery for environmental cleanup, a remand is required to determine whether or not the action before us is, in fact, one for indemnity. The RESTATEMENT OF RESTITUTION Sec. 76 (1937), states the general rule of indemnity as, "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."
 
 
 16
 In this case, the central issue on remand will be whether this suit arose because of actions by a third party. In the classic indemnity case, one party is forced to pay out money to discharge an obligation that another party should have undertaken. See, e.g., McDermott v. City of New York, 406 N.E.2d 460, 462-63 & 463 n. 4 (N.Y.1980) (discussing indemnity actions generally); Town of Winnsboro v. Wiedeman-Singleton, Inc., 398 S.E.2d 500, 502-03 (S.C.App.1990) (same). The party that discharged the obligation then sues for indemnification from the party that should have discharged the obligation. At oral argument, Exide characterized C.P.'s suit in just those terms. It contended that C.P. undertook the VOC cleanup because it was ordered to do so by the South Carolina Department of Health and Environmental Control ("DHEC"). C.P. admitted the existence of certain DHEC orders, but maintained that these orders only govern the cleanup of other, unrelated contamination at the chemical plant site.
 
 
 17
 However, no finding was made on this issue below, nor was the question briefed for this appeal, and we take no position as to its resolution. The district court is in the best position to resolve this factual issue. In doing so, that court should not become involved in a dispute that occupied some time at oral argument, namely whether this suit could most appropriately be characterized as an indemnity action, a contribution action, or as some mix of the two. This issue too finely parses the meaning of the term "indemnity" here. Although contribution and indemnity may have at one point been rather distinct rights, with one arising in equity and the other in contract, see 18 AM. JUR.2d Contribution Sec. 2 (1985), this distinction has become somewhat blurred, id. Sec. 2 cmt. More importantly, we believe that the broad language of paragraph 52's indemnity provision in discussing "all liability" and "any claims," meant to bar all suits in the nature of indemnity actions. In other words, paragraph 52 encompasses all suits arising out of actions undertaken because of obligations owed to third parties, whether or not those suits would be technically characterized as indemnity or as contribution actions. Therefore, if the district court finds on remand that C.P. was compelled to undertake the VOC cleanup, then this suit is one in the nature of indemnity and will be barred by paragraph 52. If C.P. undertook of its own accord to remedy the VOC contamination while also engaging in other cleanup operations, then the suit is not one for indemnity and may continue.[3]
 
 IV.
 
 18
 The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 REVERSED AND REMANDED WITH DIRECTIONS
 
 
 [1]
 The VOCs found at the site were tetrachloroethylene (PCE), trichloroethylene (TCE), and dichloroethylene (DCE)
 
 
 [2]
 The language in question reads: "The following metals and/or ions and only these metals and/or ions shall be considered to be CONTAMINANTS for the purpose of this indemnity; nickel, zinc, lead, and cadmium metals and sulfate and chloride ions."
 
 
 [3]
 On appeal, Exide contends that both the CERCLA and the state law claims in this suit are barred on statute of limitations grounds. The district court, of course, had no reason to reach these questions, and we do not resolve them here. On remand, however, the district court may consider whether certain causes of action advanced by C.P. are barred on statute of limitations grounds