## ZULKEE vs. WING and another.

*Master and servant—Liability of one servant for injuries caused by his negligence, concurring with that of another servant.*

A servant is liable to his master for injuries caused by his negligence to the master's property, although the negligence of another servant, not made defendant with him, concurred in producing such injuries.

APPEAL from the Circuit Court for *Winnebago* County.

Action to recover for labor and services in cutting and getting out logs, &c. Defendants claimed to recoup for damages done them by the plaintiff while so engaged in their service, by so cutting a tree as to cause it to fall upon and kill two horses belonging to them. Evidence was introduced tending to establish the defense. The plaintiff's evidence tended to show that there was also negligence on the part of defendants' teamster, one Harmon, who had charge of the horses, in not removing them when warned of the danger. The court refused the following instructions asked by the defendants: "1. If defendants' team was killed by the negligence of the plaintiff, they have a right to recoup the value of the same against the sum due the plaintiff. 2. If there was negligence on the part of the plaintiff in felling the tree, it is no defense for him that there was negligence on the part of his fellow servant Harmon in leaving his team." The following instruction was given at the defendants' request. "3. If defendants could not have prevented the accident by ordinary care, they are entitled to recoup damages." The court then gave the jury the following among other instructions: "If the negligence of the defendants, *or their servant*, contributed to the injury, they cannot recoup from the plaintiff the value of the horses, unless the plaintiff's acts were destitute of all reasonable care or prudence." "The defendants, to make out a *prima facie* defense, must not only prove that the injury arose from the negligence of the plaintiff, but also that the negligence of themselves *or servants* did not essentially contribute to it." "The defendants

are responsible for their servant Harmon's negligence, if any, in this case, to the same extent as they would have been if they had been in the place of Harmon and done the same acts."

Verdict for the plaintiff for the full amount of his claim; and the defendants appealed.

*H. B. Jackson*, for appellants, cited *Sherman v. R. & S. R. R. Co.*, 17 N. Y., 153; *Russel v. Hudson River R. R. Co.*, id., 134; *Coon v. S. & U. R. R. Co.*, 5 id., 492; 18 Wis., 700.

*Gabe Bouck*, for respondent, cited *Keegan v. Western R. R. Co.*, 8 N. Y., 175; *Ryan v. Fowler*, 24 id., 410.

DIXON, C. J. The court below, both as to the instructions given and those refused, seems to have totally misconceived or misapplied the maxim, *Qui facit per alium facit per se*; or, what is the same in principle and more usually and appropriately applied with reference to actions *ex delicto*, the maxim, *Respondeat superior*. The master is always liable to third persons for the negligence or omission of duty of his servant while acting within the scope of his employment. If a servant drive his master's carriage or cart so negligently as to overturn another carriage, or to run over an individual and do him an injury, the master is liable for the damages. The maxim, *Respondeat superior*, is applied in such a case, upon grounds of policy and security. It is founded upon the principle that it is the duty of every man, in the management of his own affairs, whether by himself or by his agents or servants, so to conduct them as not to injure another; and if he does not do so, and another is thereby injured, he shall answer for the damage. If the injury be done by a servant in the course of his employment, it is, in contemplation of law, so far the act of the master, that the latter is civilly responsible therefor. *Qui facit per alium facit per se*. But this maxim is applicable only as between the master or principal and third persons. It presupposes that the parties stand to each other in the relation of strangers, between whom there is no privity; and has no application as between

the master and his negligent servant, or the principal and his agent, who has so unskillfully or carelessly conducted his business as to cause him damage. As between the master and a stranger, the servant represents the master, and the master is responsible; but as between the master and the servant who has committed the wrong or violated his duty no less to the master than to the stranger, no such rule prevails. A servant is directly liable to his master for any damage occasioned by his negligence or misconduct, whether such damage be direct to the property of the master, or arise from the compensation which the master has been obliged to make to third persons for injuries sustained by them. To apply the maxim in such a case would be an utter perversion of it, and destructive of all liability on the part of servants. The servant in such case represents, not the master, but himself. It is his own negligence and misconduct for which he is required to answer; and, in this respect, he stands upon the same footing as any other wrong-doer. In the case above supposed, the master, having paid the damage caused by the negligence of his servant in running over a stranger, may sue the servant for the same act of negligence, to recover back the money paid. It would be strange if the servant, in answer to such an action, could say: "*Respondeat superior.* I was your servant at the time of the injury; my act was your act, my negligence your negligence; and therefore you cannot recover." Such an answer would be absurd enough; and yet the objection of the plaintiff to the claim of the defendants seems scarcely less so. It is insisted, and the jury were instructed, " that the defendants are responsible for their servant Nathaniel Harmon's negligence, if any, in this case, to the same extent as they, the defendants, would have been if they had been in the place of Harmon, and done the same acts." It is clear that under this instruction there could be no recovery against Harmon under any circumstances, whether suit were brought against him alone or jointly with the present plaintiff. But why, if correct, ought not the doc-

rine to have been carried one step further, and thus have saved any instruction as to the negligence of Harmon? If the defendants in this action are responsible for the negligence of Harmon, "to the same extent as they would have been if they had been in the place of Harmon and done the same acts," why are they not responsible for the negligence of his fellow servant, the plaintiff? And why were the jury not instructed, as to the plaintiff, that it was the same as if the defendants had been in his place and had done the same acts? This would have ended the controversy at once, since it is clear that if the defendants themselves killed the horses, they have no cause of complaint against either of their servants. The answer to these and similar propositions has already been given. Between the master and his servant, as to the wrongs committed by the servant without the assent or direction of the master, the servant does not stand in the place of his master, and if two or more servants, though acting independently of each other, are each at the same time guilty of a wrong which contributes to the injury of the master, all or either of them are liable to the master to the full extent of the injury, the same as other wrong-doers. The doctrine in such a case is correctly stated by TINDAL, C. J., in *Davis v. Garrett*, 6 Bing., 716 [19 E. C. L., 215], that no wrong-doer can be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened, whilst his wrongful act was in operation and force, which is fairly attributable to his wrongful act, he cannot set up as a defense that there was another or more immediate cause of the loss, acting upon the subject matter at the same time, or the bare possibility of a loss if his wrongful act had never been done.

*By the Court.*—The judgment is reversed, and a new trial awarded.