The opinion of the Court was delivered by
Wardlaw, A. J.
The Act of 1859 (12 Stat. 825) gives an action where before none lay, and provides that “ such action shall be for the benefit of the wife, husband, parent and children of the person whose death shall have been so caused, and shall be brought by or in the name of the executor or administrator of such person,” and that “the amount so recovered shall be divided among the before-mentioned parties in such shares as they would have been entitled to, if the deceased had died intestate and the amount recovered had been personal assets of his or her estate.”
The existence of one or more of the parties for whose benefit the action lies is essential to the right of bringing it, and should distinctly appear in the declaration. In this case of the four counts only, the first intimates that the deceased left wife and children, and that does it only incidentally in the statement of special damages.
The negligence for which a defendant is to be made to answer should be averred to have been his own, not his servants. In this respect, the last three counts which omit all mention of wife and children are unexceptionable, but the first, in which the right of action is obscurely indicated, is somewhat ambiguous, where “workmen and laborers” are mentioned, although the subsequent averment dis *209 tinctly attributes tbe act of negligence to tbe defendants themselves.
The first of the objections which we have mentioned might upon demurrer have been fatal to the plaintiff; but we-think it has been cured by tbe verdict. It must be presumed that whatever was necessary to the maintenance of the action was proved to the satisfaction of the jury before the verdict was rendered, and to even an inartificial allegation strength sufficient to sustain the proof must be attributed, when without objection it has served to procure the verdict. The motion in arrest of judgment is then refused; but as a new trial will be ordered, leave to amend the declaration is granted to the plaintiff.
Some of. the circumstances of the case do not appear in the report, and probably, upon another trial, evidence in relation to them may be had. Why did not the bell come at the hour appointed ? By whose default was delay occasioned? Who had knowledge of the delay, and of the trap-doors, in consequence thereof, being left open for a night? If Paturzo quit work at eleven o’clock, did he return to the steeple at or before three, and when did he expect to complete the job? What agreement, shown by custom or otherwise, subsisted between the vestry of St. Michael’s Church and the City Council as to the use of the steeple? Under what regulations, with what guides, through what outer entrance, did visitors ascend the steeple? Was the opening of the church itself necessary to the raising of a bell ? How often, and for what purposes, had the trapdoors generally been opened ?
The instructions which were given to the jury on thel subject referred to in the first ground for new trial, were such as give no just ground of complaint to the appellant. He who has himself contribúted in any degree to the cause of the damage of which he complains, will not be permitted to recover against another who also contributed to that *210 5cause. But this must be understood of tbe proximate cause, not any remote or collateral cause. (Wilherly, Administratrix, vs. Regent's Canal Company, 104 Eng. C. L. R. 2; 2 C. B. N. S. 740.) Here it may be said that tbe immediate cause of the death was tbe fall through the trap-doors; but considering that to be rather the misfortune sustained, equivalent to the death itself, we conceive that the proximate cause of the damage was the' conjunction of two circumstances: that the trap-doors were open, and that the deceased was ignorant of their being so. Negligence is imputed to the defendants for leaving the doors open, and failing to give proper notice thereof. The deceased is said to have contributed to his own ignorance by not having a lantern; and it is a proper subject of inquiry whether, in view of all the circumstances, he was in this guilty of negligence.
The second and third grounds for a new trial regard Paturzo, in the alternative, as a servant and as an independent contractor. If he was a servant, the instructions held that the rule which exempts a master from liability to' a servant for injury caused by the negligence of a fellow-servant applies only where the two servants are “ engaged in a common business which their joint efforts are required to accomplish.” This is too restrictive, for the rule “ applies to cases where although the immediate object on which the one servant is employed is very dissimilar from that on which the other is employed, yet the risk of injury from the negligence of the one, is so much the natural and necessary consequence of the employment which the other accepts, that it must be included in the risks which have to be considered in his wages.” (Morgan vs. The Vale of Neath Railway Co. Law Reports, 1, Q. B. 149.) Thus the runner of an engine on a railroad takes the risk of negligence in a carpenter employed to repair the road. Here, if Paturzo was the servant of the City Council, the question would be, *211 was tbe risk of injury from employments wbiob required the opening of tbe trap-doors of the steeple such a natural and necessary consequence of being a night steepleman, that it ought to have been considered by the deceased Conlin when he undertook for wages to be a steepleman.
The other alternative, which regards Paturzo as an independent contractor, seems however to be more consistent with the evidence, and has been more pressed upon the attention of this Court. A master is liable for the negligence of his servant engaged in his business, because he selects his servant and controls him. He should not be answerable for acts done by the servant of another, or by that other who is not subject to his control. Therefore, the owner of property, fixed or movable, for whose benefit a work about such property is to be accomplished, is not held answerable for the negligence of an independent contractor to whom he has committed the work, to be done without his control in its progress. (Habbit vs. The London and N. W. Railway Co. 4 Wels. H. & G. Ex. Rep. 254.) If tbe work involves the creation of a nuisance, owner and contractor become joint wrong-doers, and either or both must answer for consequences; but for private wrongs done by the contractor in the execution of the work, the contractor, and not the owner, must answer: both are not liable, neither jointly nor successively. Under this head the right of the public to go up and down the steeple at all times, day and night, with or without permission or guide, might, if established, show that a nuisance was produced by the opening of the trap-doors, which, if continued beyond the time required for a lawful work, became wrongful in the workmen who opened and left open these doors, and also in the owner who permitted them to do so. And under suitable allegations the owner might be made responsible for the misconduct or negligence of a contractor known to be unworthy of trust, to whom a work involving *212 danger to others was entrusted. But independent of those matters, the question whether Paturzo was an independent contractor, is highly important in this case. Upon this question the instructions given to the jury seem to have held, that to make Paturzo an independent contractor, he should under his contract have had, at the time when the deceased fell, exclusive use and right over the place, not subject to any reservation of right in the defendants for performance of the duties of night steeplemen. The place here meant, we suppose, was the steeple. To make Paturzo an independent contractor, it was essential that he should have had such control of 'the place as was convenient for doing of the job which he undertook, and for such time as the doing of the job required; but rights in others, not inconsistent with this control, may well have subsisted along with it. If Paturzo was an independent contractor, the material inquiries were, what, by implication or otherwise, was made his d uty as to the closing of the trap-doors; and if he was guilty of no negligence, did the defendants neglect a duty incumbent upon them, either in not obtaining proper information of the dangerous condition in which the doors were left, or in not warning the deceased Conlin of the extraordinary risk to which he thereby was subjected.
A new trial is ordered, with leave for the plaintiff to amend.
DuNKIN, C. J., and Imglis, A. J., concurred.

Motion dismissed.