PATTERSON *v.* BRATER.

1. NEGLIGENCE—LOSS CAUSED BY NEGLIGENCE OF EMPLOYEE NOT EXCUSED BY REMOTE NEGLIGENCE OF EMPLOYER.

In an action by the administrators of the estate of a county treasurer, deceased, for money which disappeared while defendant, an employee, was alone in charge of the office, *held*, that if the negligence of both the treasurer and defendant proximately caused the loss, defendant is not liable; but if the loss was due to defendant's negligence, the remote negligence of the treasurer, having no causal relation to the loss, constitutes no defense.

2. SAME—CONTRIBUTORY NEGLIGENCE—TRIAL—INSTRUCTIONS.

In the absence of evidence of any negligence other than that of defendant, the trial judge was in error in submitting to the jury the question of the contributory negligence of the treasurer or other employees.

3. SAME—TRIAL—EVIDENCE—QUESTION FOR JURY.

Plaintiffs' claim that the loss was undisputed and that the trial judge was in error in submitting to the jury the question of whether there had been a loss cannot be sustained, in view of evidence that the audit and report to the supervisors, made after the claimed loss, showed full balances.

Error to Saginaw; Dingeman (Harry J.), J., presiding. Submitted October 19, 1923. (Docket No. 60.) Decided December 19, 1923.

Case by Russell G. Patterson and another, administrators of the estate of Egbert G. Patterson, deceased, against Charles G. Brater for the loss of certain moneys in defendant's possession. Judgment for defendant. Plaintiffs bring error. Reversed.

*R. L. Crane,* for appellants.

*A. Elwood Snow,* for appellee.

CLARK, J.     Egbert H. Patterson was treasurer of the county of Saginaw from January 1, 1919, to October 19, 1920, when he died.    This suit was brought by administrators of his estate.    When he took office, he employed James Lunney as deputy and cashier and a Miss Fehrman as clerk.    Charles G. Brater, defendant, a former employee in the office, was held over by deceased to teach the others their duties.    In the conduct of business, others besides Lunney had access to the cash drawer.    On the morning of May 16, 1919, on opening the safe, the cash was found to be short $1,500; three packages of bills of $500 each were missing, it is claimed.    There was no evidence of burglary.    For some time there had been carried as cash in the office about $6,000 in bills and coin, a part being the three packages of bills, and the evidence is that there were but three such packages. The afternoon of May 15, 1919, because of a proclamation of the mayor of the city of Saginaw, was treated locally as a half holiday.    Deceased favored closing his office for a part of the afternoon.    Defendant had an appointment at the office for the late afternoon and preferred to remain and keep the office open until 5 o'clock, the usual closing hour.    Deceased consented. Miss Fehrman was absent for the day.    About 3 o'clock, deceased and Lunney left.    Defendant was in sole charge of the office the remainder of the day. It was the practice, and it was a duty, at the close of business each day to balance and count the cash and to remove it from the cashier's cage to the safe in the vault.    There was a time lock on the safe.    At the close of business on May 14, 1919, when the cash was counted, the three packages were there.    On May 15th, at noon, the money was taken from the cashier's cage to the vault.    At 1 o'clock, when it was returned to the cage, the three packages were there.    After 1 o'clock, on May 15th, Lunney and

defendant were the only persons known to have been in the cage. Defendant paid out no money that afternoon. The extent of business done was to certify one or two deeds as to taxes. During the afternoon, at the request of defendant, a deputy county clerk remained in the treasurer's office while defendant was out for a few minutes. About 5 o'clock two women were in the public part of the office, close to the cage. Defendant was balancing the account for the day. The money was in sight. One woman, Jennie Wondree, testified that a part of it then was "two or three packages of money with paper band around," "two or three piles wrapped with a band." The other woman, Alma Borro, testified:

"I was with Jennie Wondree. * * * I saw Brater taking care of the money. When we came in he carried it out on a tray and carried it back to the vault. * * * Defendant was not carrying out the money when we went in but was getting it ready and took it away before we went out."

Defendant did not count the cash that night, leaving it for Lunney to count the next morning. He testified that he did not remember whether the three packages of bills were in the office at any time that afternoon. The testimony of the two women is not contradicted except as to time. Defendant testified that he placed the money in the safe somewhat after 5 o'clock. He said: "I took all of the money out of the cash drawer and properly deposited it in the safe." Lunney said that defendant was present when he unlocked and opened the safe at 8 o'clock on the morning of May 16th and discovered the loss. Defendant testified that he came to the office about 8:30 o'clock. An audit and a report to the board of supervisors, subsequently made, did not state or show thereon such shortage. Plaintiffs had evidence that the amount of the shortage was carried as cash until

it was made good by a check of deceased's son for the amount.

The declaration contained two counts. It is claimed to advance two theories of recovery, that defendant appropriated the money to himself, and, that it was lost through his negligence. The trial judge instructed the jury on both theories, and also instructed them:

"The second count of the plaintiffs' declaration is based upon the theory of claimed negligence on the part of the defendant. One who makes a claim of this kind is called upon to establish, *first*, that he himself was free from any negligence which either caused or contributed to the loss complained of. So in this case, gentlemen of the jury, the plaintiffs here, by bringing this action are called upon to show that the deceased, Egbert G. Patterson, was free from any negligence in the premises which either caused or contributed to the loss of the money in question, if there was any loss. And in this connection I charge you that any contributory negligence on the part of any of Mr. Patterson's employees in the office, other than the defendant in this case, would bar a recovery by the plaintiffs in this action. * * *

"Of course, whether there was contributory negligence upon the part of Mr. Patterson, or any of his employees other than the defendant in this case is a question of fact for you to determine, and in determining that question you must bear in mind all the circumstances surrounding at the time and place of the alleged loss. Does that make it clear to you?

"If you find there was any contributory negligence on the part of Mr. Patterson, the deceased, or any of his employees, aside from Mr. Brater, then there could be no recovery in this case on the second count. That is the question of claimed negligence. But whether there was contributory negligence or not is a matter you will have to determine from all the facts and circumstances in this case. That is a question of fact."

After the jury had been out for a time they returned into court, whereupon the following:

"*The Court:* Do I understand, gentlemen of the jury, that you want some further instructions, or some of my instructions repeated to you on some phase in the case?

"*Foreman:* Yes, your honor, we come to the conclusion that Mr. Patterson, Mr. Brater, Mr. Lunney are guilty of negligence.

"*The Court:* On that phase of it you want instructions?

"*Foreman:* Yes.

"*The Court:* I will read my charge to you on that phase of it."

The judge then read the portion of his charge above quoted and said, "Does that answer your question? A juror: It does as far as I am concerned." The jury went out and presently returned and rendered a verdict of no cause of action, on which judgment was entered. Plaintiffs have removed the cause to this court by writ of error.

We consider questions discussed in appellants' brief. If defendant was guilty of negligence which was the proximate cause of the loss, negligence on the part of other employees, if any, constitutes no defense for such negligence of defendant. *Pepper* v. *National Bank,* 12 Ky. Opin. 219; *Zulkee* v. *Wing,* 20 Wis. 408 (91 Am. Dec. 425).

Evidence tending to show that defendant was guilty of no negligence proximately causing the loss would, of course, be admissible, and this would include evidence that the loss was caused proximately by the negligence of another rather than by his negligence. If negligence of both defendant and his employer proximately caused the loss, defendant is not liable. If the loss was due to defendant's negligence, deceased's remote acts of negligence, or, his negligence having no causal relation to the loss, constitute no defense.

But on this record there is no evidence of negligence having any causal relation to the loss on the part of

deceased, Lunney or Miss Fehrman. This is not a case of shortage discovered on an audit. The claim is for the loss of three specific packages of money. It is of no importance here whether there had been frequent or infrequent audits or trial balances. There is nothing in this record to show that the amount of money in the office was negligently large, nor that the amount on hand in any way caused the loss. There is no evidence that prudent and proper management required the money to be counted when Lunney left that afternoon, nor that the counting of cash but once per day, at the end of each day, although different employees had access to the cash drawer, was insufficient or negligent, but beyond that there is uncontradicted testimony that the packages were in the office after Lunney left that day. Nor was it negligent to leave defendant alone in the office that afternoon. He had practically nothing to do but to balance and count the money and to close the safe, the vault and the office, a task requiring ordinarily less than one hour. He was experienced and competent, in fact an instructor of the others. He was not overpowered by others and the office thus robbed. *Loretto Benevolent Ass'n* v. *Pope,* 7 Ky. Opin. 681. We find no support for the charge and finding of contributory negligence.

It is said that the loss was undisputed and that the court erred in instructing the jury that they were to determine whether there had been in fact a loss. The audit and the report to the supervisors, made after such claimed loss, showing full balances to be on hand, was some evidence that there had been no loss.

Appellants argue at length the evidence which, it appears, made a question for the jury under the so-called misappropriation count. They do not, however, point out or make clear any act or acts of negligence on the part of defendant, proximately causing the loss, supporting their claimed right to go to the

jury under the so-called negligence count, so that question will not be discussed.

Judgment reversed, with costs to plaintiffs.    New trial granted.

WIEST, C. J., and. FELLOWS, MCDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.