0798

SOUTH CAROLINA INSURANCE COMPANY, Respondent v. JAMES C. GREENE AND COMPANY, a corporation, and Blane H. Lawson, doing business as Jim Robertson Insurance Agency, Appellants.

(348 S. E. (2d) 617)

Court of Appeals

*Robert W. Brown* of *Weinberg, Brown & MacDougall,* Sumter, *for appellant James C. Greene* and *Co.*

*Herbert W. Hamilton* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for appellant Blane H. Lawson.*

*Alva M. Lumpkin* and *B. Michael Brackett* of *Lumpkin & Sherrill,* Columbia, *for respondent.*

Submitted March 19, 1986.

Decided Sept. 8, 1986.

BELL, Judge:

South Carolina Insurance Company seeks indemnity from its agents, James C. Greene and Company and Blane H. Lawson, for alleged negligence which caused it to pay a default judgment against its insured, Patricia Manning, in excess of policy limits. Greene and Lawson each raise the defense of imputed contributory negligence as a bar to the Insurance Company's recovery against them. The circuit court granted the Insurance Company's motion to strike the defense of imputed contributory negligence. Greene and Lawson appeal. We affirm.

Lawson, doing business as Jim Robertson Insurance Agency, was the initiating agency for an automobile liability insurance policy issued by the Insurance Company to one Karen Bruce. The policy provided third party liability coverage of up to $15,000 for bodily injury for any one person. It also provided that the Insurance Company had the right and the duty to defend the insured against third party claims and the right to negotiate and settle any claim.

The covered automobile, while being operated with Bruce's permission by her mother, Patricia Manning, was involved in an accident in which one Edward Coker received personal injuries. Greene undertook on behalf of the Insurance Company to investigate the accident and to adjust Coker's claim. According to the allegations of the complaint, Coker's attorney offered in writing to settle the claim for $15,000. The offer allegedly specified it would be withdrawn if not accepted within ten days. Greene allegedly failed to

transmit the offer to the Insurance Company, thus depriving it of the opportunity to negotiate and settle Coker's claim within the policy limits.

Thereafter, Coker commenced suit against Patricia Manning. Manning caused the suit papers to be delivered to Lawson in a timely manner as required by the insurance policy. Lawson allegedly forwarded them to Greene. However, no answer was filed. Coker thereupon obtained a default judgment against Manning for $150,000. The complaint alleges the suit went into default as a result of the negligence of Lawson and Greene in failing to forward the suit papers to the Insurance Company. After it failed in an attempt to have the default set aside, the Insurance Company settled the judgment for $130,000, which it paid to Coker. The Insurance Company then instituted this action against Greene and Lawson seeking to be indemnified for the $130,000.

Both Greene and Lawson answered the complaint raising, among other defenses, contributory negligence. Each alleged that the other was the agent of the Insurance Company and that the other's alleged negligent conduct would therefore be imputed to the Insurance Company, as principal, so as to bar its action.

The Insurance Company moved to strike the defenses of imputed contributory negligence from both answers. The circuit court granted the motion, holding that under South Carolina law an agent who is sued by his principal for negligence may not impute the negligence of another agent to the principal in order to raise a defense of contributory negligence.

## I.

Whether an innocent principal is barred from recovering damages caused by the negligence of one agent because another agent has also been negligent is a question of first impression in South Carolina. Common sense and fairness suggest that when two agents of the same principal have both injured him by their negligence, each should be liable rather than neither. Our consideration of the authorities convinces us the law holds both agents liable in such circumstances.

## A.

A cause of action for negligence arises from the concurrence of three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act of omission, i.e., failure to exercise the care of a reasonable man in the circumstances; and (3) damage proximately resulting from the breach of duty. *Brown v. South Carolina Insurance Company*, 284 S. C. 47, 324 S. E. (2d) 641 (Ct. App. 1984), *cert. dismissed*, 290 S. C. 154, 348 S. E. (2d) 530. Negligence does not exist in the air; if there is no breach of a duty of care, there is no liability for negligence. *Morris v. Mooney*, 288 S. C. 447, 343 S. E. (2d) 442 (1986).

## B.

Where several causes combine to produce injury, a person is not relieved from liability for negligence because he is responsible for only one of them. It is sufficient that his negligence is an efficient cause without which the injury would not have resulted to as great an extent and that any other efficient cause is not attributable to the person injured. *Gray v. Barnes*, 244 S. C. 454, 137 S. E. (2d) 594 (1964). Consequently, if a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his own negligence to produce the harm does not relieve him of liability. *Brown v. National Oil Company*, 233 S. C. 345, 105 S. E. (2d) 81 (1958). In such cases, both tortfeasors are in breach of a duty of care owed to the plaintiff and, because the negligence of both concurred to produce the injury, both are liable to the full extent of the plaintiff's damages. Under the common law, as it presently exists in South Carolina, the courts will not undertake to apportion damages among the various persons whose negligence concurred to cause the plaintiff's injury. *Rourk v. Selvey*, 252 S. C. 25, 164 S. E. (2d) 909 (1968); *see also Davis v. Garrett* (1830) 6 Bing. 716, 130 Eng. Rep. 1456.

## C.

The law reaches a different result if an actionable injury is caused by the combined lack of care of more than one

person, but one of those persons is the plaintiff himself. In such cases, the doctrine of contributory negligence applies in South Carolina.

Contributory negligence is a lack of ordinary care on the part of a person injured by the negligence of another which combines and concurs with that other's negligence and contributes to the injury as a proximate cause without which the injury would not have occurred. *Taylor v. Bryant*, 274 S. C. 509, 265 S. E. (2d) 514 (1980); *Horne v. Atlantic Coast Line R. R. Co.*, 177 S. C. 461, 181 S. E. 642 (1935). If, in the exercise of ordinary care, the plaintiff might have avoided the consequences of the defendant's negligence, he is the author of his own injury in the eyes of the law. *See Conlin v. City Council of Charleston*, 49 S.C.L. (15 Rich.) 201 (1868). Accordingly, the common law, as it presently exists in South Carolina, bars him from recovering anything against a defendant whose negligence also caused his injuries, even if the defendant was guilty of greater negligence. *Langley v. Boyter*, 284 S. C. 162, 325 S. E. (2d) 550 (Ct. App. 1984), *rev'd on other grounds*, 286 S. C. 85, 332 S. E. (2d) 100 (1985); *Gladden v. Southern Ry. Co.*, 142 S. C. 492, 141 S. E. 90 (1928).

Negligence and contributory negligence rest on different legal principles. Stated another way, negligence and contributory negligence are not symmetrical rules of law. A defendant guilty of negligence is liable because he breached a duty of care owed to the plaintiff. However, a plaintiff guilty of contributory negligence is not barred from recovery because he breached a duty of care owed to the defendant.[1] Rather, the doctrine of contributory negligence embodies the principle that an injured person should not, as a matter of natural justice, be permitted to ask from others greater care than he himself exercises for his own welfare. If the plaintiff is contributorily negligent, recovery is barred on the principle that the law should not attempt to apportion damages among parties who are both

---

[1] This is not to say, of course, that a plaintiff guilty of contributory negligence never owes a duty to the defendant to exercise ordinary care. A plaintiff may be guilty of both negligence and contributory negligence on the same set of facts. *See Douglass v. Southern Ry. Co.*, 82 S. C. 71, 62 S. E. 15 (1908), *rehearing denied*, 82 S. C. 71, 63 S. E. 5 (1908).

at fault in causing an actionable injury, since it would not have occurred without the negligence of both. *See Bruno v. Pendleton Realty Co.*, 240 S. C. 46, 124 S. E. (2d) 580 (1962); *Herrell v. St. Louis-San Francisco Ry. Co.*, 324 Mo. 38, 23 S. W. (2d) 102 (1929).

This distinction between negligence and contributory negligence was stated with admirable clarity by Viscount Simon in *Nance v. British Columbia Electric Ry. Co., Ltd.* [1951] A. C. 601, 611:

> [W]hen negligence is alleged as the basis of an actionable wrong, a necessary ingredient in the conception is the existence of a duty owed by the defendant to the plaintiff to take due care.... But when contributory negligence is set up as a defense, its existence does not depend on any duty owed by the injured party to the party sued, and all that is necessary to establish such a defense is to prove to the satisfaction of the jury that the injured party did not in his own interest take reasonable care of himself and contributed, by this want of care, to his own injury. For when contributory negligence is set up as a shield against the obligation to satisfy the whole of the plaintiff's claim, the principle involved is that, where a man is part author of his own injury, he cannot call on the other party to compensate him in full.

*Accord, Staveley Iron & Chemical Co. Ltd.* [1956] A. C. 627, 648 (per Lord Tucker) (contributory negligence is not founded on breach of duty); *Lewis v. Denye* [1939] 1 K. B. 540, 554-555 (per du Parcq, L. J.) (the doctrine of contributory negligence cannot be based upon a breach of duty to the negligent defendant).

### D.

For purposes of this appeal, Greene and Lawson argue not that the Insurance Company itself was guilty of contributory negligence, but that the lack of due care by the other agent should be imputed to the Insurance Company under the doctrine of *respondeat superior.*

As a general rule, the law holds a person liable only for his own acts and omissions. *See McCalla v. Wood,*

2 N.J.L. (1 Penn.) 86 (1806) ("Upon principles of law, one person can never be made liable for the trespass of another.") Thus, a person is normally charged with negligence or contributory negligence because he is personally at fault for failure to exercise ordinary care. The doctrine of *respondeat superior* creates an exception to the general principle that liability for negligence is based on personal fault.

The modern doctrine of *respondeat superior* makes a master liable to a third party for injuries caused by the tort of his servant committed within the scope of the servant's employment. *See Gathers v. Harris Teeter Supermarket, Inc.*, 282 S. C. 220, 317 S. E. (2d) 748 (Ct. App. 1984). In its origins, however, the doctrine concerned those cases in which the master commanded the servant to do the tortious act. *See* Stat. 27 Edw. III, st. 2, c. 19 (1353) (no man shall forfeit his goods for the trespass of his servant unless he do it by the command or procurement of his master); Y. B. 11 Edw. IV, 6, pl. 10 (1472), cited in Wigmore, *Responsibility for Tortious Acts; Its History-II*, 7 Harv. L. Rev. 383, 386 (1894) (where master enters an undertaking with third party and servant carries out undertaking at master's command whereby third party is injured, he shall not have an action against the servant but against the master). Although the tortious act was that of the servant, liability was imposed on the master on the principle *"qui facit per alium facit per se"* (he who acts through another acts himself). The maxim applied only where the tortious act had been commanded by the master; it did not apply to the case of negligence, since the master does not ordinarily direct his servant to be negligent. *See Mills v. Armstrong (The Bernina)* [1888] 13 A. C. 1, 13 (per Lord Barmwell).

Thus, as originally conceived *respondeat superior* was based on a "master's tort" theory which regarded the master himself as breaching his duty to the plaintiff by commanding the servant to commit a tort. *See McCalla v. Wood*, 2 N.J.L. (1 Penn.) 86 (1806) ("It is true, that if one command or authorize his servant to commit a trespass, he is answerable himself; but then it is the trespass of the master, according to the well known maxim of the law, *qui facit per alium facit per se*.") This is in distinct contrast to the

modern doctrine, which imposes liability for the servant's tort on a master who gives no command and it without personal fault in causing the plaintiff's injury. The "no fault" or "servant's tort" theory of the modern law holds the master liable for damages simply because of his status as master. Where the relationship of master-servant exists between the defendant and the tortfeasor, the law is said to "impute" the negligent act of the servant to the master. *See Johnson v. Atlantic Coast Line R. R. Co.*, 142 S. C. 125, 140 S. E. 443 (1927).

This shift in the theory of *respondeat superior* was introduced into the law by Lord Chief Justice Holt in the late seventeenth century. Holt appears to have seen the servant's tort cases as situations where one of two innocent persons — the master and the person injured by the servant — must suffer through the wrongdoing of a third. As a matter of policy, Holt decided the loss must be borne by the master, who, by employing the servant, enabled the tort to be committed. He, therefore, chose to impose liability on the innocent master, because "seeing somebody must be a loser . . ., it is more reason that he that employs and puts a trust and confidence in the [wrongdoer] should be a loser, than a stranger." *Hern v. Nichols* (1709) 1 Salk. 289, 91 Eng. Rep. 256.

Holt disguised the new rule by using the legal fiction of implied command: "And tho' I am not bound by the act of a stranger in any case, yet if my servant doth anything prejudicial to another, it shall bind me, where it may be presumed that he acts by my authority, being about my business." *Turbeville v. Stamp* (1698) Comb. 459, 90 Eng. Rep. 590. Although the master's liability had nothing to do with an actual command to the servant, the implied command theory made it plausible to use the familiar maxim *qui facit per alium facit per se* to explain the result.

Once the implied command theory gained currency, the courts extended the fiction to cover other relationships such as principal-agent and husband-wife.[2] The fiction became so

---

[2] *See, e.g., Hern v. Nichols, supra; Head v. Briscoe, Bart. and Wife* (1833) 5 Car. & P. 484, 172 Eng. Rep. 1064; *Attorney-General v. Riddle* (1832) 2 C. & J. 493, 149 Eng. Rep. 209. The highwater mark of imputed negligence was the case of *Thorogood v. Bryan* (1849) 8 C. B. 115, 137 Eng. Rep. 452, which held

imbedded in the thinking of common lawyers that even the eminent Blackstone confused the reasons for the vicarious liability of the master:

> As for those things which a servant may do on behalf of his master, they seem to proceed upon this principle, that the master is answerable for the act of his servant, if done by this command, either expressly given, or implied: *nam qui facit per alium, facit per se.* Therefore, if the servant commit a trespass by the command . . . of his master, the master shall be quilty of it. * * * * In the same manner, whatever a servant is permitted to do in the ususal course of his business, is equivalent to a general command. . . . A wife, a friend, a relation, that use to transact business for a man, are *quoad hoc* his servants; and the principal must answer for their conduct: for the law implies, that they act under a general command; and without such a doctrine as this no mutual intercourse between man and man could exist with any tolerable convenience. . . .

1 Bl. Comm. 429, 430 (Tucker ed. 1803). Blackstone's discussion suggests he was not entirely persuaded by the implied command theory, since he found it necessary to justify the rule by an additional consideration of policy, *viz.*, commercial convenience.

By the turn of the century, it had become increasingly evident the implied command theory was not a satisfactory rationale on which to ground imputed liability.[3] Under the

---

that a passenger in an omnibus is so far identified with the driver that the negligence of the driver is a defense to an action by the passenger against a negligent third party. The House of Lords overruled *Thorogood v. Bryan in Mills v. Armstrong (The Bernina)* [1888] 13 A. C. 1. For a good discussion of the American authorities, *see Weber v. Stokely-Van Camp, Inc.*, 274 Minn. 482, 144 N. W. (2d) 540 (1966).

[3] The bluntest, but by no means the only, criticism of the doctrine was voiced by Mr. Bumble in *Oliver Twist.* When confronted with his misdeeds, Bumble, in the manner of his first ancestor, Adam, blamed his wife:

"That is no excuse," replied Mr. Bownlow. "You . . . are the more guilty of the two, in the eye of the law; for the law supposes that your wife acts under your direction."

"If the law supposes that," said Mr. Bumble, squeezing his hat emphatically in both hands, "the law is a ass — a idiot."

C. Dickens, *The Adventures of Oliver Twist,* 333 (London 1914).

influence of Lord Kenyon and his contemporaries, the fiction of implied command began to give way to a theory of enterprise liability which held the master responsible for acts of a servant within the scope of his employment. *See Savingnac v. Roome* (1794) 6 T. R. 125, 101 Eng. Rep. 470 (rejecting argument that action cannot be maintained against master unless servant acts at his command); *Bush v. Steinman* (1799) 1 B. & P. 404, 126 Eng. Rep. 978 (one who has work going on for his benefit must be civilly answerable for acts of those whom he employs); *Nicholson v. Mouncey* (1812) 15 East 384, 104 Eng. Rep. 890 (master is answerable for those whom he employs for injuries done by them to others within the scope of employment) (per Lord Ellenborough). By midcentury, the Victorian judges had openly abandoned the implied command theory as a justification for vicarious liability: "The general rule is, that the master is answerable for every such wrong of the servant or agent as is committed in the course of the service and for the master's benefit, though no express command or privity of the master be proved." Barwick v. English Joint Stock Bank (1867) 2 L. R. Ex. 259, 265. In the leading case of *Limpus v. London General Omnibus Co.* (1862) 1 H. & C. 526, 158 Eng. Rep. 933, involving a collision caused by the negligent driving of an omnibus, Willes, J., explained the master's liability as dictated primarily by the need to provide an effective remedy to the injured party:

> It is well known that there is virtually no remedy against the driver of an omnibus, and therefore it is necessary that, for injury resulting from an act done by him in the course of his master's service, the master should be responsible; for there ought to be a remedy against some person capable of paying damages to those injured by improper driving.

*Id.*, at 539.

Traces of the implied command theory may be found in the cases in modern times,[4] but *respondeat superior* is now generally considered to rest on a concept of enterprise liability. Modern theory allocates the risk of the

---

[4] *See, e.g., Broom v. Morgan* [1952] 2 Q. B. 1007; *Doran v. Thomsen,* 76 N.J.L. 754, 71 A. 296 (1908).

servant's negligence to the master, not because he is at fault, but because he is normally in a better position than the servant to respond in damages and is better able than the victim to spread the risk by treating third party liability as a cost of doing business. A rule resting on these policy justifications is clearly a rule of "no fault" liability.

### E.

The doctrine of *respondeat superior* is often confused with the power of an agent to bind his principal to a third party. Although the terms "principal" and "agent" are modern, the power of one person (the agent) to bind another (the principal) in legal transactions has its origins in the ancient common law; *respondeat superior* is a relatively modern doctrine. *See* Ferson, *Bases for Master's Liability and for Principal's Liability to Third Persons*, 4 Vand. L. Rev. 260, 262-264 (1951). The agency concept is based on principles of contract law; *respondeat superior* belongs to the law of torts.

In a true agency situation, the principal is liable *vice* the agent by reason of his consent to be bound. An agent contracting with the authority of his principal binds him to the same extent as if the principal personally made the contract. The principal's liability to the third party is contractual and direct. *See* J. Story, *Commentaries on the Law of Agency* § 442 (1839).

In contrast, under the doctrine of *respondeat superior*, the principal is liable in addition to the agent, not by reason of his consent to be liable, but by operation of law. *See Reynolds v. Witte*, 13 S. C. 5 (1879). This is most plainly illustrated in those cases where the agent acts against the express instructions of his principal, but within the scope of his employment: the principal is still liable. *See e.g., Williams v. Commercial Casualty Insurance Co.*, 159 S. C. 301, 156 S. E. 871 (1931); *West v. Service Life & Health Insurance Co.*, 220 S. C. 198, 66 S. E. (2d) 816 (1951). Liability to the third party is delictual and derivative. See Story, *supra*, § 452. Because both types of liability are commonly lumped together under the rubric of "agency," the distinction between the two is often obscured.

## F.

In this case, Greene and Lawson argue that when a principal sues an agent for negligent performance of his duties, the agent can impute to the principal the contributory negligence of another agent. There are no South Carolina cases directly on point. The authorities in other jurisdictions are divided on the question.

In the leading case of *Zulkee v. Wing*, 20 Wis. 408 (1866), the owners of a tract of timber sought damages against Zulkee, a logger whom they employed to cut and remove logs. While engaged in the owners' service, the logger cut a tree so as to cause it to fall upon and kill two horses belonging to them. The evidence tended to show there was also negligence on the part of the owners' teamster, Harmon, who had charge of the horses and failed to remove them when warned of the danger. The trial judge charged the jury that the owners could not recover if the negligence of their servant contributed to the injury: "The defendants are responsible for their servant Harmon's negligence, if any, ... to the same extent as they would have been if they had been in the place of Harmon and done the same acts." On appeal, the court reversed, holding:

> If the injury be done by a servant in the course of his employment, it is, in contemplation of law, so far the act of the master, that the latter is civilly responsible therefor. *Qui facit per alium facit per se.* But this maxim is applicable only as between the master or principal and third persons. It presupposes that the parties stand to each other in the relation of strangers, between whom there is no privity; and has no application as between the master and his negligent servant, or the principal and his agent, who has so unskillfully or carelessly conducted his business as to cause him damage. As between the master and a stranger, the servant represents the master, and the master is responsible; but as between the master and the servant who has committed the wrong or violated his duty no less to the master than to the stranger, no such rule prevails. A servant is directly liable to his master for any damage occasioned by his negligence or misconduct, whether such damage be direct to the property of the

master, or arise from the compensation which the master has been obliged to make to third persons for injuries sustained by them.

\* \* \* \*

Between the master and his servant, as to the wrongs committed by the servant ..., the servant does not stand in the place of his master, and if two or more servants, though acting independently of each other, are each at the same time guilty of a wrong which contributes to the injury of the master, all or either of them are liable to the master to the full extent of the injury, the same as other wrongdoers.

*Id.*, at 409-410, 411.

The rule in *Zulkee v. Wing* was rejected in the more recent case of *Capitola v. Minneapolis, St. Paul & Sault Ste. Marie R. R. Co.*, 258 Minn. 206, 103 N. W. (2d) 867 (1960). In that case, a fireman employed by the railroad was riding in the cab of a locomotive operated by an engineer when it had a head-on collision with another engine also owned by the railroad. The railroad claimed against the fireman for damage to the two engines. The jury found that the fireman's negligence was a contributing cause of the accident, but the court permitted him to impute the negligence of the railroad's other employees as a defense to the railroad's claim:

The general rule is that an agent against whom a principal brings an action of tort for negligence has the defense of contributory negligence. The great majority of employed persons today are employed by corporate employers which act only through agents and co-employees. To hold that contributory negligence must be personal or that the negligence of a coemployee is not attributable to the employer in his situation would be tantamount to exempting corporate employers from the general rule. Neither logic nor considerations of policy or justice indicate this result.

*Id.*, 258 Minn. at 208, 103 N. W. (2d) at 869 (citation omitted).

We believe the better reasoned rule is found in *Zulkee v. Wing.* Negligence and contributory negligence are not sym-

metrical rules of law. Since this case involves contributory negligence, it raises no question of the principal's breach of a duty of care owed to his agents. The purpose of contributory negligence is to preclude a person who through want of care causes his own injury from calling on another to compensate him in full for his damages. That purpose is not served by imputing an agent's negligence to his principal in a case like this, since, *ex hypothesi*, the principal did not contribute to his own injury; it resulted solely from the negligence of his two agents.

The reasoning in the *Capitola* case confuses contributory negligence with the principles of imputed liability. Contrary to the reasoning of the *Capitola* decision, to permit recovery by the principal against the agent does not create an "employer's exception" to the rule of contributory negligence, because the master did not fail to exercise ordinary care on his own behalf; he is innocent of any negligence. On the other hand, the *Capitola* rule does create an exception to the general rule that if a defendant's negligence is the proximate cause of the plaintiff's injury, the fact that another person's negligence concurred to produce the harm does not relieve him of liability. We perceive no reason, as a matter of justice or logic, for creating an "employee's exception" to this rule when an innocent master has been injured by his servants.

The purpose of imputed liability is to provide an effective remedy for the person injured by the servant's negligence. As between two innocent parties, the law places the risk of the servant's negligence on the master, not because he is at fault, but in order to provide a remedy. Its purpose is not to let a negligent party evade responsibility for his wrongdoing; the negligent servant remains liable both to the third party and to his master. *See Bell v. Clinton Oil Mill*, 129 S. C. 242, 124 S. E. 7 (1924); *Brown v. Poritzky*, 30 N. Y. (2d) 289, 332 N.Y.S. (2d) 872, 283 N. E. (2d) 751 (1972).

If *respondeat superior* were applied to the case of a master injured by his servants, the reason for the rule would be subverted, since it would deny the injured party any recovery and let those guilty of negligence go free. This result stands the doctrine on its head: imputed liability is designed to provide a remedy where none exists, not to cut off a

remedy which is otherwise available. As the opinion in *Zulkee v. Wing* points out, imputed liability makes good sense in a suit between the master and a stranger, but it makes no sense at all in a suit between the master and his servant.

Greene and Lawson assert this case is controlled by the decisions in *Riddle-Duckworth, Inc. v. Sullivan,* 253 S. C. 411, 171 S. E. (2d) 486 (1969), and *Howle v. McDaniel,* 232 S. C. 125, 101 S. E. (2d) 255 (1957). *Riddle-Duckworth* held that a principal's contributory negligence is available as a defense to an agent against whom the principal brings an action for negligence. Since the Insurance Company was not contributorily negligent in this case, the rule does not apply. *Howle* held that a bailee's contributory negligence may not ordinarily be imputed to his bailor to defeat the bailor's recovery against a third party for negligence. It likewise has no application to this case.

The decisions in *McJunkin v. Waldrep,* 225 S. C. 73, 81 S. E. (2d) 284 (1954), and *Murphy v. Yacht Cove Homeowners Association,* 289 S. C. 367, 345 S. E. (2d) 709 (1986), offer better guidance on the question before us. In *McJunkin,* the Court held that the negligence of one member of a joint enterprise may not be imputed to other members of the enterprise in an action *inter se.* In *Murphy,* the Court held that joint owners of a condominium cannot raise the defense of imputed negligence in an action by individual condominium owners against the owners' association for negligence. In that case the individual owners argued that each member of the owners' association was both principal and agent for the other members, so that the negligence of each member must be imputed to every other member. The holdings in *McJunkin* and *Murphy* suggest the rule we adopt between principal and agent is the correct one.

The concept of fault lies at the core of common law tort liability. Only the strongest of reasons should compel the law to depart from the fault principle. While there may be exceptional cases in which "no fault" liability is justified by the need to provide a remedy for legal injury, it is difficult to conceive of any case in which "no fault" principles should be used to cut off well recognized remedies for a proven legal wrong.

Greene and Lawson argue for a formalistic application of legal doctrine without regard to the reasons which justify the doctrine. The law, however, is not merely an exercise of judicial power through the mechanical manipulation of rules; it is an organic body of principles rooted in reason, ethics, and human experience. The reason for a rule must control the application of the rule: *nam ratio legis est anima legis; cessante ratione legis cessat et ipsa lex* (for the reason of the law is the life of the law; if the reason of the law ceases, the law itself ceases).

## G.

We reach our decision on one additional ground. The problem presented here can only arise in a jurisdiction which adheres to the doctrine of contributory negligence. If agents of the same principal are permitted to impute each other's negligence to defeat the principal's recovery, the doctrine of contributory negligence is brought to bear in its full rigor upon a party innocent of any negligence himself. For the reasons stated in *Langley v. Boyter*, 284 S. C. 162, 325 S. E. (2d) 550 (Ct. App. 1984), *rev'd on other grounds*, 286 S. C. 85, 332 S. E. (2d) 100 (1985), this Court does not favor the doctrine of contributory negligence. Although we will continue to apply the doctrine in obedience to the Supreme Court, we see no reason to extend it to a case it was never meant to govern.

## II.

As an alternative ground for reversal, Greene and Lawson assert the trial judge erred in striking the defense of imputed contributory negligence because one of them is a stranger to the Insurance Company, while the other is its agent. In an argument reminiscent of Tweedledum and Tweedledee, each claims he is the stranger and the other is the agent. As a putative third party, each wishes to impute the negligence of the other to the Insurance Company.

Obviously Greene and Lawson cannot both prevail on this theory. However, each contends the question of who is the agent and who is the stranger should be decided by the jury. Until the jury decides, Greene and Lawson argue, a motion to strike the defense of contributory negligence is pre-

mature. The argument is ingenious, but our review of the record leaves us unpersuaded.

The complaints allege that Greene investigated and adjusted insurance claims for the Insurance Company at the time complained of. Both answers admit this fact. The agreed statement of the case also admits that Greene undertook to adjust the Coker claim on behalf of the Insurance Company. These admissions are sufficient to establish privity between Greene and the Insurance Company. Greene is not a stranger.

The agreed statement of the case also admits that Lawson was the initiating agency for the insurance policy issued by the Insurance Company to Karen Bruce. Lawson's answer admits he had duties to the Insurance Company in connection with the Coker lawsuit and affirmatively alleges he performed them with due care according to the Insurance Company's directions. These admissions are sufficient to establish privity between Lawson and the Insurance Company. Lawson is not a stranger either.

We find no significance in the fact that both answers contain a conclusory denial that the defendant is the plaintiff's agent. A defendant cannot both admit and deny a fact; and once it is admitted, the admission stands. *See Atlantic Coast Line R. R. Co. v. Little*, 195 S. C. 455, 12 S. E. (2d) 7 (1940); *Skelton v. Summit Builders of Greenville, Inc.*, 288 S. C. 453, 343 S. E. (2d) 446 (1986). The admitted facts directly contradict the denials that Greene and Lawson are agents. Therefore, the admissions prevail.

For the reasons stated, we hold the trial judge committed no error when he granted the motion to strike the defenses of contributory negligence from the answers. Accordingly, his ruling is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.