1415

Sebbieleen C. RUSSELL, Administratrix of the Estate of Gregory Lee Wood, Deceased, Appellant v. CITY OF COLUMBIA, H. R. Ray and R. J. Hall, Respondents.

(390 S. E. (2d) 463)

Court of Appeals

*J. Marvin Mullis, Jr.*, and *Timothy R. Walker*, Columbia, for appellant.

*Frank S. Potts*, and *Kenneth M. Suggs*, Columbia, for respondents.

Heard Oct. 17, 1989.

Decided Nov. 13, 1989.

BELL, Judge:

This is an action in negligence for wrongful death. Sebbieleen C. Russell, administratrix of the estate of Gregory Lee Wood, brought suit against the City of Columbia and two of its police officers, H. R. Ray and R. J. Hall. After an amended complaint was filed, the circuit court granted the

Defendants' motion for judgment on the pleadings. *See* Rule 12(c) S. C. R. Civ. P. Russell appeals. We affirm.

On appeal from the granting of a Rule 12(c) motion, ▮ the reviewing court may not consider matters outside the pleadings. A Rule 12(c) motion admits the well pleaded facts in the complaint; it does not admit the inferences drawn by the plaintiff from such facts, nor does it admit conclusions of law. *Carolina Winds Owners' Association, Inc. v. Joe Harden Builder, Inc.,* 297 S. C. 74, 374 S. E. (2d) 897 (Ct. App. 1988), *cert. dismissed,* Order No. 89-OR-229 (filed February 27, 1989), questioned on other grounds, *Kennedy v. Columbia Lumber Co., Inc.,* 299 S. C. 335, 384 S. E. (2d) 730 (1989). The court must take well pleaded factual allegations as true. *Id.* However, allegations which are conclusory rather than factual should be disregarded. *Myrtle Apartments, Inc. v. Lumbermen's Mutual Casualty Co.,* 258 N. C. 49, 127 S. E. (2d) 759 (1962).

The well pleaded allegations of the amended complaint establish the following material facts.

On September 7, 1985, Wood was at a restaurant in Columbia, where he consumed alcohol. Eventually, he was asked to leave the premises. Outside the restaurant, Wood engaged in an altercation with a restaurant employee. As a result, he hit his head on the pavement, seriously injuring himself.

Someone reported the disturbance to the City of Columbia Police Department. Officers Ray and Hall were dispatched to the scene where, according to the complaint, they "took control" of the "situation" and of Wood. Russell admits the Officers did not take Wood or any other person into custody.

When they arrived, the Officers observed others trying to aid Wood. During the investigation, they also observed that Wood was injured and intoxicated and could not take care of himself. There is no express allegation that Wood needed emergency medical care, although it is alleged he was "bleeding profusely."

Officer Ray investigated the complaint and determined that some disorderly conduct had occurred before his arrival. However, neither Wood nor the restaurant employee wished to cause an arrest. After concluding the investigation, the Officers insisted Wood leave the area. They let him

walk from the scene, unassisted, in the general direction of a nearby railroad trestle. They made no attempt to assist him with his injuries or to detain him for his own protection.

Sometime later, Wood was found drowned in a creek about 100 feet from the scene of the investigation. He had fallen into the creek from the railroad trestle.

Russell alleges three theories on which the Defendants are liable in negligence for Wood's death.

First, she claims the Officers owe a common law duty "to the public at large, and to the Plaintiff [sic] in particular," to care for, protect, assist, and provide treatment to citizens who are incapacitated, intoxicated, or seriously injured.[1]

Alternatively, she alleges the City of Columbia Police Department's Procedure and Policy Manual sets out procedures for dealing with intoxicated or seriously injured persons. She alleges these procedures mandate "ministerial acts" which the Officers failed to perform while investigating the Wood incident. The pleadings do not specify the nature of these "ministerial" acts.

Finally, Russell alleges the Officers owed the Plaintiff [sic] a duty to refrain from interfering with others trying to render aid to Wood in his helpless condition.

## I.

To recover for negligence, the plaintiff must show (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach. *South Carolina Insurance Company v. James C. Greene & Co.*, 290 S. C. 171, 348 S. E. (2d) 617 (Ct. App. 1986). The absence of any one of these elements renders the cause of action insufficient. *South Carolina Ports Authority v. Booz-Allen & Hamilton*, 289 S. C. 373, 346 S. E. (2d) 324 (1986). The existence of a duty owed is a question of law for the court. *Ballou v. Sigma Nu*

---

[1] Giving liberal construction to the pleadings, we interpret the allegations that a duty was owed to "the Plaintiff in particular" to mean a duty was owed to Wood in particular, not to Russell.

*General Fraternity,* 291 S. C. 140, 352 S. E. (2d) 488 (Ct. App. 1986).

Ordinarily, the common law imposes no duty on a person to act. An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. It follows that a person usually incurs no liability for failure to take steps to benefit others or to protect them from harm not created by his own wrongful act. *Rayfield v. South Carolina Department of Corrections,* 297 S. C. 95, 374 S. E. (2d) 910 (Ct. App. 1988), *cert. denied,* 298 S. C. 204, 379 S. E. (2d) 133 (1989).

Policemen and other officers of the peace enjoy a ▉▉ special status in law which places on them certain affirmative duties not shared by private citizens. They possess considerable discretion in performing these duties and have the powers necessary to carry them out in a lawful manner. These duties are functions and attributes of their office. *In re Olson,* 211 Minn. 114, 300 N. W. 398 (1941).

At common law, policemen have a duty to conserve the peace and good order of the community;[2] to take reasonable and lawful measures to detect, report, and prevent the commission of crimes;[3] to bring offenders to justice;[4] and to retain evidence for use in court.[5] Russell concedes, however, that the courts of South Carolina have never recognized a common law duty on policemen to care for, protect, assist, and provide treatment to citizens who are incapacitated, intoxicated, or seriously injured. She cites no cases from other jurisdictions recognizing such a common law duty. We hold there is no such duty under the common law of South Carolina.[6]

---

[2] *Rice v. Connolly* [1966] 2 Q. B. 414, [1966] 2 All E. R. 649.

[3] *Regina v. Waterfield* [1964] 1 Q. B. 164, [1963] 3 All E. R. 659.

[1] *Rice v. Connolly, supra.*

[5] *Regina v. Waterfield, supra.*

[6] We do not suggest that police officers lack the authority, in their discretion, to aid persons in need. If, in the exercise of their office, they undertake to render aid, they, of course, assume a duty to exercise reasonable care in the circumstances. In this case, there was no such undertaking.

As the pleadings do not allege, and Russell does not argue, that any statute, contract, relationship, or property interest created such a duty in this case, there is no other basis for finding a duty owed to Wood under general principles of negligence law. Therefore, the circuit judge properly granted judgment to the Defendants on the first theory.

## II.

In effect, Russell's second theory is that the existence of the Columbia Police Department's Procedures and Policy Manual was a special circumstance creating an affirmative duty to Wood. She alleges the Manual prescribed "ministerial duties" for dealing with intoxicated or seriously injured persons which the Officers violated in Wood's case. The relevant provisions of the Manual are nowhere alleged.

Russell treats the Manual as analogous to a statute imposing a "special duty" on a public official. Ordinarily, internal administrative procedures or policies are promulgated to promote the orderly operation of governmental agencies. They are not intended primarily to protect individual members of the public from particular types of harm. Any actual benefit or harm to a particular individual from carrying out or failing to carry out such procedures or policies is incidental to the administrative purpose. Therefore, internal administrative directives generally impose no duty on public officials towards individual members of the public. *Cf. Rayfield v. South Carolina Department of Corrections, supra.*

The rule is, however, subject to an exception. If an administrative procedure or policy is promulgated for the essential purpose of protecting identifiable individuals from a particular kind of harm, then it may create a "special duty" which gives rise to a cause of action in negligence by an individual who is damaged as a result of a breach of the duty.

In order to state a cause of action arising from a "special duty," Russell must plead facts showing that (1) an essential purpose of the Manual's provisions is to protect against a particular type of harm; (2) the Manual, either directly or indirectly, imposes on a specific official a duty to guard against or not to cause that harm; (3) the class of persons the Manual intends to protect is identifiable

before the fact; (4) Wood was a person within the protected class; (5) the Officers knew or had reason to know of the likelihood of harm to Wood if they failed to do their duty; and (6) the Officers had sufficient authority to act in the circumstances. *See Rayfield v. South Carolina Department of Corrections, supra.* Stated differently, the pleadings must demonstrate that the essential purpose of the Manual was to protect from the kind of harm Wood suffered and that Wood was a member of the class of persons the Manual intended to protect. *Hutto v. Southern Railway,* 100 S. C. 181, 84 S. E. 719 (1915).

Unfortunately, it is impossible to determine from the amended complaint if the Manual created a special duty. Among other things, the pleadings fail to specify what duties the Manual imposed on police officers. Without knowing what duties the Manual imposes, we cannot determine if the purpose of creating those duties was to protect certain persons against a particular type of harm. Similarly, we cannot tell whether the Officers had sufficient authority to act in the circumstances of this case. The bare allegation that the Manual sets out measures a police officer should take when encountering an intoxicated or injured person, followed by the conclusory allegation that the Officers violated the Manual, is not enough. The plaintiff has the burden of pleading sufficient facts to establish each element of his cause of action. *Moore v. City of Columbia,* 284 S. C. 278, 326 S. E. (2d) 157 (Ct. App. 1985).

### III.

Russell premises her third theory on the allegation that when the Officers arrived at the scene they "took control of the situation away from the individuals trying to render aid to Wood, thereby depriving him of their help." She alleges this violated a duty to "refrain from interfering with others trying to render aid to [Wood] in his condition."

It is not clear from Russell's arguments that the Officers had a duty to "refrain from interfering" in the circumstances. The existence of such a duty is a question of law. Russell cannot, as she seems to think, create the duty by her pleadings. It must exist in law.

We need not decide whether a duty was owed, however. Assuming the Officers had a duty not to interfere, the amended complaint is still fatally defective, because it does not allege facts to show Wood's injuries proximately resulted from the Officers' conduct.[7]

Indeed, the facts alleged tend to indicate the contrary. According to the amended complaint, when the Officers finished their investigation, they let Wood leave the scene without hinderance. There is nothing in the amended complaint remotely suggesting that others on the scene were not also free at that point to leave and to give Wood whatever assistance they wished to render. They were not in custody. The Officers had ceased to "control" the situation and Wood. Wood and the others were now in essentially the same position they enjoyed before the Officers arrived.

There are simply no facts in the amended complaint establishing a causal link between the alleged acts of the Officers and Wood's subsequent drowning in the creek. Without an allegation of proximate causation, the amended complaint failed to state a cause of action in negligence. Accordingly, the circuit judge correctly granted judgment on the pleadings.

For the reasons stated, we affirm the judgment.

Affirmed.

SHAW and CURETON, JJ., concur.

---

[7] The allegations concerning the duty to "refrain from interfering" are set forth in the first cause of action in paragraphs 9 and 13 of the Amended Complaint. Nowhere does the first cause of action contain an express allegation of proximate causation. The second cause of action, based on failure to follow the police manual, does contain a conclusory allegation that the Officers' failure to "abstain from interfering" was a proximate cause of Wood's death.